IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| CRYSTAL MANNING as next friend of L.D., a minor, MARIAHLEE MANSAW as next friend of P.M., a minor, MELISSA HOLLINS as next friend of D.H., a minor, as wrongful death beneficiaries of BILLIE DAVIS, deceased, and RUBY LEE DAVIS, individually and as representative of the estate of BILLIE DAVIS, deceased, *Plaintiffs*, <br><br> v. <br><br> LASALLE CORRECTIONS LLC d/b/a LASALLE CORRECTIONAL CENTER *Defendants.* | Case No. 3:25-CV-00871 <br><br> JUDGE TERRY DOUGHTY <br><br><br> MAGISTRATE JUDGE KAYLA McCLUSKY |

**PLAINTIFFS' THIRD AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiffs, CRYSTAL MANNING as next friend of L.D., a minor, MARIAHLEE MANSAW as next friend of P.M., a minor, MELISSA HOLLINS as next friend of D.H., a minor, as wrongful death beneficiaries of BILLIE DAVIS, deceased, and RUBY LEE DAVIS, individually and as representative of the estate of BILLIE DAVIS, deceased, complaining of Defendants, LASALLE CORRECTIONAL CENTER, LLC., ("Defendant") and for cause of action would respectfully show unto this Honorable Court the following:

**INTRODUCTION**

This is a civil rights action under 42 U.S.C. § 1983 and state law resulting from events that happened during the pretrial detention of Billie Davis ("Davis") at the LaSalle Correctional Center, a private for-profit jail owned by LaSalle Correctional Center, LLC, located in LaSalle Parish, Louisiana. The events that give rise to this complaint occurred on March 1, 2022, a mere four days

1

after Davis arrived at LaSalle Correctional Center. Employees of LaSalle Correctional Center caused Davis's death by violating his rights under the Fourteenth Amendment to the United States Constitution and under state law.

Defendant's employees' unlawful actions include use of unconstitutionally excessive force against Davis, ignoring Davis's serious ongoing medical needs, and failing to monitor Davis despite his severe and life-threatening medical condition.

## I.    PARTIES

### A. Plaintiffs

1.1    Plaintiff, Crystal Manning, is an individual residing in Fort Bend County, Texas. Plaintiff, Crystal Manning, brings claims as next friend of L.D., minor child of Billie Davis, deceased. Ms. Manning and L.D. reside in Fort Bend County, Texas.

1.2    Plaintiff, Mariahlee Mansaw, is an individual residing in Kansas. Plaintiff, Mariahlee Mansaw, brings claims as next friend of P.M., minor child of Billie Davis, deceased. Ms. Mansaw and P.M. reside in Kansas.

1.3    Plaintiff, Melissa Hollins, is an individual residing in Fort Bend County, Texas. Plaintiff, Melissa Hollins, brings claims as next friend of D.H., minor child of Billie Davis, deceased. Ms. Hollins and D.H. reside in Fort Bend County, Texas.

1.4    Plaintiff, Ruby Lee Davis, is an individual residing in Galveston County, Texas. Plaintiff, Ruby Lee Davis, is the mother of Billie Davis and brings claims individually and as representative of the estate of Billie Davis, deceased.

### B. Defendant

1.5    LaSalle Correctional Center, LLC. ("LaSalle Center") is a Louisiana Limited

Liability company and is the owner and operator of LaSalle Correctional Center in LaSalle Parish.[1] Billie Davis was under the care and supervision of LaSalle Center at the time of his death. LaSalle Center is a final policymaker for Harris County, Texas, for purposes of providing jail-related services and meeting the needs of its convicted inmates and pretrial detainees held at LaSalle Correctional Center. Defendant LaSalle Center operates the private jail in Olla, LaSalle Parish, Louisiana. Defendant LaSalle Center has made an appearance in this case.

## II. VENUE AND JURISDICTION

2.1	Venue is proper in the Western District of Louisianna under 28 U.S.C. § 1391(b)(2) because all or a substantial amount of the events or omissions giving rise to Plaintiffs' claims occurred in Olla, Louisianna.

2.2	This Court has subject matter jurisdiction over the causes of action alleged in this complaint pursuant to 42 U.S.C. §1983, 28 U.S.C. § 1331 (federal questions) and 28 U.S.C. § 1343 (civil rights). This Court has supplemental jurisdiction over the plaintiffs' related state law claims pursuant to 28 U.S.C. § 1367(a).

## III. FACTS

3.1	In In February 2022, Mr. Davis was arrested and incarcerated in a Harris County jail located in Houston, Texas, for back child support and avoiding arrest. Davis was denied bail and would remain a pretrial detainee until disposition of his case. Due to overcrowding in the Harris County jail, Davis was transferred to LaSalle Correctional Center, a private jail facility located in La Salle Parish, Louisiana. LaSalle Center agreed to accept Harris County jail inmates in accordance with a contract between Harris County and Southwestern Correctional, LLC d/b/a LaSalle Southwest Corrections, LaSalle Management Company and LaSalle Corrections, LLC.

---

[1] The Facility "LaSalle Correctional Center" in LaSalle Parish will be referred to as LaSalle Correctional Center.

3

(Exhibit A). While confined at LaSalle Correctional Center, Davis was entitled to all protections afforded to him under the Fourteenth Amendment to the United Sates Constitution, including the right to adequate medical care, the right to be free of unconstitutional use of force, and the right to humane conditions of confinement. While at LaSalle Correctional Center, Davis received serious and life-threatening injuries at the hands of LaSalle Center's officers. On March 1, 2022, Davis died after LaSalle Center employees used unwarranted force, ignored his need for medical attention, and put him in an administrative segregation cell without proper medical intervention. The officers and medical personnel referenced in this complaint were employees of LaSalle Center at the time of the incidents in question.

    3.2    Davis arrived at the LaSalle Correctional Center on Friday, February 25, 2022, and was assigned to A Dorm. When Davis arrived at LaSalle Correctional Center, he had no injuries. On March 1, 2022, at approximately 9:00 a.m., Lt. Swett was distributing commissary in A Dorm when Davis requested a remote control for the television and inquired why the television had been turned off. At 9:09:02, Davis was sitting on his bunk. In response to Davis's actions, Lt. Swett requested the shift Lieutenant, Lt. Hayden, to come speak with Davis and remove him from the area. At 9:09:08, Lt. Hayden and Officer Calhoun came into A Dorm and Lt. Hayden confronted Davis. At that time, Davis put his shirt on and tied his jumper at the waist. At 9:09:35, Sgt. Doughty entered A Dorm. When Lt. Hayden confronted Davis, Davis reached out and touched Lt. Hayden. Lt. Hayden then said, "I will mace your monkey ass boy." Lt. Hayden then attempted to use pepper spray on Davis. Davis became compliant and Lt. Haden said, "you are going out." When Davis walked past Lt. Hayden, Lt. Hayden grabbed Davis from behind. Between 9:09:53 and 9:10:00, a scuffle ensued. At 9:10:05, Sgt. Doughty, Lt. Hayden, and Officer Calhoun pushed Davis into the foyer where there are no cameras. At the time Davis entered the foyer, he was face down on the

ground. Davis was first out of camera view at 9:10:05.

3.3     While Davis was in the foyer out of camera view, Lt. Tingle, Officer Crider, Officer Spence and Officer Lam entered the foyer. At 9:10:25, while Davis was still in the foyer, Assistant Warden Stucky (now Warden Stucky) and Major Smith appeared in the hall at the entrance to the foyer. At 9:10:31 Officer Spence left the foyer, and Officer Ambrose entered the foyer. At 9:12:05, two minutes after Davis was taken into the foyer out of view of the cameras, Lt. Brown and Officer Reeves pulled Davis's face down on his knees from the foyer into the hall. Davis's jumper was removed, and he was wearing only his boxers and T-shirt. Davis was visibly covered with blood when he exited the foyer. During the time Davis was in the foyer and out of view of the cameras, the LaSalle Center guards used unconstitutional force on Davis by stomping on him and kicking him and beating him when he was helpless on the ground, restrained, and unresponsive. Inmates from A Dorm at LaSalle Center reported that they saw multiple LaSalle Center officers beating, stomping, macing and kicking Davis while he was on the floor unresponsive in the foyer. One inmate stated that the officers stomped on Davis repeatedly and kicked him in his head. Another inmate stated that Davis was stomped on before a guard reentered the Dorm and asked, "if anyone else wanted some."

3.4     After guards pulled Davis into the hall, at 9:12:07, numerous officers, Lt. Brown, Officer Reeves, Officer Calhoun, Lt. Hayden and Officer Ambrose, jumped on Davis's back in a dog pile in the. hallway. Officer Ambrose hit Davis several times in the lower body and Officer Lam stomped down on Davis's right ankle while Davis was on his stomach. By 9:13:12, Davis was pulled up from the floor, was handcuffed, and shoved up against the wall. At that point, it was evident that Mr. Davis was missing teeth and bleeding from his mouth and face.

3.5     At 9:14:00, Davis was carried/escorted by four officers, on information and belief the officers are Lt. Hayden, Officer Reeves, Lt. Brown, and Officer Calhoun, out of the hall toward

5

medical. Injuries to Davis's mouth and forehead were visible. At 9:14:11, Davis entered the medical area, and officers stood him up against the wall across from the medical door. At 9:14:53, Davis collapsed, and Officer Calhoun and Officer Jerrel held Davis to keep him from falling. At that point, Davis was bent at the waist with his head down. At 9:15:11, the officers pushed Davis up to be evaluated by Nurse Warren. Nurse Warren evaluated Davis for 10 seconds and then walked back into Medical.

    3.6    Nurse Warren returned to Davis 20 seconds later and appeared to treat Davis's mouth. At 9:16:01, Davis slumped forward and the officers placed Davis on his back on a bench. Nurse Warren continued treating Davis's mouth. Between 9:16:31, and 9:17:23, Nurse Warren went back into Medical, retrieved a latex glove, and wrapped Davis's teeth in the glove, then returned to Medical. At no point while Davis was in the medical area did Nurse Warren evaluate the obvious trauma to Davis's forehead. At 9:17:33, Davis appeared to be sitting without assistance when he slumped forward and was caught by Officer Jerrell. At 9:19:01, Davis slumped off the bench and was picked up by Officers Jerrell and Crider. At 9:19:32, Lt. Hayden placed smelling salts under Davis's nose, and it appeared to arouse Davis. At 9:21:22, Lt. Brown and Officer Jerrell carried Davis out of medical in a transport carry.



3.7     At 9:22:21, Davis was placed face down outside isolation cell 104. At 9:23:14, officers placed Davis in a restraint or "suicide chair" in isolation cell 104 and closed the door to the cell at 9:25:39. Between 9:33:47 and 9:45:51, Davis appears to move in various ways. At 9:48:29, Lt. Hayden, Officer Crider, and Officer Ambrose open the door to cell 104 and observe Davis for a little more than 20 seconds. 9:53:39 is the last time Davis showed any movement. Davis lost consciousness and never regained it.



3.8     At 10:01:47, Sgt. Horton opened the door to cell 104. At 10:01:58, Sgt. Horton nudged Davis with his foot. At 10:02:19, Sgt. Horton sought assistance. At 10:02:30, Lt. Hayden entered the cell and found Davis unresponsive. At 10:03:24, Lt. Hayden put smelling salts under Davis's nose but there was no response. At 10:03:33 Nurse Warren and Officer Calhoun entered the cell. At 10:04:43, Nurse Warren started chest compressions on Davis. At 10:06:26, Nurse Fussell and NP Brewer assisted Nurse Warren with life-saving measures. At 10:19:56, Davis was placed on a stretcher and taken away.

3.9     Davis arrived at the hospital at 10:38 a.m. According to hospital progress notes,

Davis was unresponsive for thirty minutes after suffering blunt trauma to the head. Hospital employees noted that Davis was bleeding from his mouth, had multiple abrasions to his hands and lower extremities, and suffered blunt force head trauma. Davis was pronounced dead at 10:47 a.m. Davis died because of the injuries inflicted on him by LaSalle Center officers and their subsequent failure to provide constitutionally adequate medical care when Davis was in obvious distress.



3.10   LaSalle Center agreed to receive inmates from Harris County under a contract between the county and several LaSalle entities. In that agreement, LaSalle Center agreed to "provide detention, care, and transport of certain County inmates . . .." *Id.* at ¶ 1), A). The agreement makes LaSalle Center responsible for providing medical services by appropriately licensed personnel for the inmates. *Id.* at ¶ 3. LaSalle Center was required to provide 24-hour emergency medical care for inmates in its custody. And LaSalle Center represented and warranted to Harris County that it would provide its services in compliance with the Texas Commission on Jail Standards and "shall use that degree of care and skill commensurate with the profession to comply with all applicable federal, state, and local laws." Additionally, LaSalle Center agreed to

8

comply with Louisiana Best Practices for corrections. LaSalle Center owed Davis a duty to not use physical force as a punishment and to provide Davis emergency medical care.

    3.11    The warden of LaSalle Correctional Center is the policy maker for the Center. LaSalle Center engaged in and permitted to exist a pattern, practice, or custom of unconstitutional conduct toward inmates, including, but not limited, to, use of force when an inmate was restrained and rendered virtually helpless, or non-threatening, use of force when an inmate was already injured and in need of medical care. LaSalle Center guards using excessive force when inmates are helpless, restrained, unresponsive, or nonthreatening is persistent and widespread. LaSalle officers know to take inmates to the area where no cameras cover their actions when they are administering unconstitutional force like they did here. LaSalle officers continued to kick, hit, mace, and stomp Davis while he was defenseless, compliant, helpless, and already severely injured. The Assistant Warden and a Major witnessed the continuing use of force against Davis while he was unresponsive but did nothing to stop the beating. Officers who were administering Davis's beating asked other inmates if they wanted some too indicating their willingness to administer additional beatings. LaSalle Center's warden allowed the use of unconstitutional excessive force so pervasively that it was the de facto policy of the Center.

    3.12    LaSalle Center failure to secure needed medical care for Davis was motivated by persistent, widespread practices of LaSalle such that refusing to provide medical care for serious medical needs of inmates was the custom and practice of LaSalle Center. LaSalle Center policy makers and its officer were deliberately indifferent to the substantial risk of serious medical harm to Davis. The guards who beat Davis were aware that he was unresponsive and were aware that they administered blows to Davis's head. The guards and Nurse Warren could visibly see the contusion to Davis's head but provided him no medical attention for that injury. Even knowing

that Davis sustained serious head injuries which were plainly visible, Nurse Warren did not seek examination from a qualified healthcare provider to assess Davis's head wound. Instead, the officers and Nurse Warren put Davis into a restrained chair in an isolation cell without constant monitoring. Nurse Warren and the officers were subjectively aware that Davis's head injury could lead to his death. However, LaSalle Center, like other LaSalle Corrections entities, had a custom or practice of spending inadequate amounts on jail medical care to make a higher profit on its contracts. LaSalle Center encouraged its officers and medical personnel to keep medical issues in-house no matter how serious an inmate's medical needs.

    3.13    The corporate policies, practices, and customs described above were the moving force behind Davis's suffering and death and the constitutional violations alleged herein. LaSalle Center also ratified the unconstitutional conduct of its employees and agents with respect to the detention and death of Davis. Despite clear video evidence of unconstitutional misconduct, LaSalle approved the constitutionally deficient actions of its medical staff and the unconstitutional conduct of the involved corrections officers. LaSalle Center did not punish any of the officers or medical personnel and promoted Assistant Warden Stucky, who witnessed the beating and refused to stop it, to Warden.

    3.14    All acts and omissions committed by LaSalle Center were committed with intent, malice, and/or with reckless disregard for Davis's federal constitutional rights. Moreover, LaSalle Center either (a) intentionally pursued a course of conduct for the purpose of causing injury, or (b) knew or should have known that its conduct would naturally and probably result in injury or damage and, nevertheless, continued the conduct with malice, deliberate indifference, and reckless disregard of the consequences.

    3.15    LaSalle Center is an affiliate of LaSalle Corrections. Upon information and belief,

LaSalle Corrections creates single purpose entities to own its jails or provide staffing for a jail. On LaSalle Corrections web site, it states that "LaSalle Corrections and its affiliates currently manage 18 correctional facilities in Louisiana, Texas and Georgia with a total inmate capacity of over 13,000, and lease one facility to a law enforcement agency. We pursue opportunities throughout the United States." https://lasallecorrections.com. Although LaSalle Center is a separate limited liability company from other LaSalle Corrections facilities, it is part of the family of LaSalle facilities, and they should all be considered as one when it comes to custom, practice, or policies of depriving inmates of constitutional protections.

3.16    LaSalle Center and its affiliated entities have been the subject of numerous lawsuits and investigations as the result of the LaSalle culture of unconstitutional conduct. For instance, as reported in *Sabbie v. Southwestern Cor., LLC*, case no. 5:17-cv-113, 2019 U.S. Dist. LEXIS 214463 * (E.D. Tex, March 6, 2019), the Magistrate Judge recommended that the LaSalle Corrections defendants' motion for summary judgment be denied. The substance of the evidence submitted by the plaintiffs in that case was that the LaSalle Corrections defendants operated the Bi-State jail and denied Michale Sabbie constitutional medical care and used excessive force. In addition, the evidence was sufficient to support a finding that LaSalle Corrections defendants had a policy or custom of using excessive force and denying constitutionally mandated medical care.

3.17    In *Mathis v. Southwestern Corr., LLC*, case no. 5:20-cv-146, 2023 U.S. Dist. LEXIS 238704* (E.D. Tex. February 7, 2023), another case involving the Bi-State jail, the court recommended denying the LaSalle Corrections defendants' motions for summary judgment. The substance of the allegations by plaintiff was that the LaSalle Corrections defendants denied an inmate constitutionally mandated necessary medical care leading to the inmate's death.

3.18    In *Jones v. Southwestern Correctional, LLC et. al.*, 5:19-cv-104 (E.D. Tex. April

11

21, 2021), the trial court denied the LaSalle Corrections defendants' motion for summary judgment for plaintiff's claim that the LaSalle Corrections defendants were deliberately indifferent to the inmate's serious medical needs. Once again, the case related to the Bi-State jail in Texarkana.

3.19	In *Joseph v. Franklin*, Civil No. 1:22-CV-3198, 2023 U.S. Dist. LEXIS 158402 (W.D. La. August 21, 2023), the plaintiff alleged that he was subjected to unconstitutional use of force while he was handcuffed in the LaSalle Correctional Center. He also alleged that LaSalle Center employees acted with deliberate indifference to his serious medical needs.

3.20	In *Beachem v. LaSalle Corr. LLC*, No. 3:21-CV-00299, 2024 U.S. Dist. LEXIS 55694, at *17 (W.D. La. March 26, 2024), the court denied a motion for summary judgment filed by LaSalle defendants who operated the Madison Parish Correctional Center where an inmate died following an asthma attack. Plaintiffs alleged that the LaSalle defendants were deliberately indifferent to the inmate's serious medical needs.

3.21	In *Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493 (5th Cir. 2022), which is strikingly similar to this case, the plaintiffs alleged that guards at the Richwood Correctional Center, which was managed by a LaSalle entity, used unconstitutional force against an inmate and were deliberately indifferent to the inmate's serious medical needs. The guards took the inmate to an area where there were no cameras and proceeded to beat him. *Id*. at 500. Despite obvious signs of serious injury, the inmate was not provided any real treatment. *Id*. 501. The inmate died of head trauma from the beating he took. *Id*. The court found that the evidence raised a fact issues that required a trial. *Id*. at 514.

3.22	Houston Public Media, a service of the University of Houston, reported in 2024 that 19 people died in custody of LaSalle Center in 2021, and in 2022, 27 people died at the jail. (https://www.houstonpublicmedia.org/articles/news/criminal-justice/2024/03/18/479621/harris-

12

county-is-sending-hundreds-of-inmates-to-private-prisons-with-seemingly-little-oversight/). The Louisiana Voice has reported on LaSalle Corrections issues of excessive force and denied medical care.   (https://louisianavoice.com/2021/02/07/lasalle-corrections-already-pounded-in-several-lawsuits-hit-by-one-400k- settlement-and-another-lawsuit-so-far-this-year/).

3.23  LaSalle Center owed a duty to Davis to treat him in accordance with the applicable standards of medical and correctional care. LaSalle Center breached those duties, as alleged herein, and Davis's damages, including his pain and suffering and his death, were the direct and foreseeable result of the tortious actions and inactions of LaSalle Center as alleged herein.

3.24  All acts and omissions committed by the Corporate Defendants through their employees and agents were committed in violation of applicable state law standard of care and with intent, malice, deliberate indifference, and/or with reckless disregard for Billie Davis's rights under state and federal law. Under the state law claims set forth herein, LaSalle Center is vicariously responsible for the acts and omissions of its employees as alleged herein.

## IV.   CAUSES OF ACTION

a. *Negligence*

4.1  Plaintiffs incorporate by reference the allegations of the previous paragraphs of this complaint as if each were fully set forth herein in their entirety.

4.2  Based on the allegations contained in this complaint, Defendant is liable under Louisiana Civil Code Article 2315. Defendant is liable for its officer's actions in the course and scope of their employment by denying Davis's rights under Article One Section 5 of the Louisiana Constitution of 1974. Defendant's employees, in the course and scope of their employment, used unconstitutionally excessive force and failed to provide adequate medical care for serious medical problems. Defendant was also negligent in failing to properly train its officers in the use of force

and in providing necessary medical care. Defendant failed to exercise reasonable care, and such failure was negligent and a proximate cause of the incident in question and resulting damages to Plaintiffs. Defendant is vicariously responsible for the acts and omissions of its employees acting in the course and scope of their employment.

4.3     LaSalle Center was negligent by each of the following acts and/or omissions, among others to be proven at trial. Taken singularly or combined, these acts and/or omissions by LaSalle Center employees constitute negligence and were a proximate cause of the incident in question and resulting damages to Billie Davis and Plaintiffs. These acts include, but are not limited to, the following:

    a.  Negligent hiring of guards;

    b.  Negligent training of guards;

    c.  Developing policies and a culture of allowing guards to excessive force against inmates;

    d.  Developing policies and a culture of allowing guards to beat inmates;

    e.  Failing to provide adequate medical care to inmates;

    f.  Failing to respond when inmates need medical assistance; and

    g.  Failing to monitor inmates in medical distress.

4.4     LaSalle Center failed to exercise reasonable care, and such failure was negligent and a proximate cause of the incident in question and resulting damages to Plaintiffs.

### b. (In the alternative) LaSalle Center was negligent under Texas law and are responsible for his wrongful death and for his survival claims.

4.5     Plaintiffs incorporate by reference the allegations of the previous paragraphs of this complaint as if each were fully set forth herein in their entirety.

4.6     Pursuant to Texas Civ. Prac. & Rem. Code § 71.002, Defendant is liable for the

wrongful death of Davis. Additionally, Defendant is liable pursuant to Civ. Prac. & Rem. Code § 71.021, for survival of Davis's causes of action including his pain and suffering.

4.7 Defendant's employees, in the course and scope of their employment, were negligent in the use of unconstitutionally excessive force and failed to provide adequate medical care for serious medical problems. Defendant was also negligent in failing to properly train its officers in the use of force and in providing necessary medical care. Defendant failed to exercise reasonable care, and such failure was negligent and a proximate cause of the incident in question and resulting damages to Plaintiffs. Defendant is vicariously responsible for the acts and omissions of its employees acting in the course and scope of their employment.

4.8 LaSalle Center was negligent by each of the following acts and/or omissions, among others to be proven at trial. Taken singularly or combined, these acts and/or omissions by LaSalle Center employees constitute negligence and were a proximate cause of the incident in question and resulting damages to Billie Davis and Plaintiffs. These acts include, but are not limited to, the following:

    a. Negligent hiring of guards;

    b. Negligent training of guards;

    c. Developing policies and a culture of allowing guards to excessive force against inmates;

    d. Developing policies and a culture of allowing guards to beat inmates;

    e. Failing to provide adequate medical care to inmates;

    f. Failing to respond when inmates need medical assistance; and

    g. Failing to monitor inmates in medical distress.

### c. 42 U.S.C. § 1983

4.9 Based on the allegations in this complaint, LaSalle Center is under 42 U.S.C. § 1983

for violating Billie Davis's rights under the Fourteenth Amendment to the United States Constitution. This includes depriving Billie Davis of this Fourteenth Amendment right to adequate medical care and the right to be free from the use of excessive force.

4.10　LaSalle Center's policy of excessive force and failure to provide necessary medical care demonstrates a conscious indifference to the clearly established constitutional rights secured to any person under the Fourteenth Amendments to the Constitution of the United States. The foregoing policies were a moving force in causing the constitutional deprivations alleged herein.

## V.　PUNITIVE DAMAGES

5.1　Plaintiffs incorporate by reference the allegations of the previous paragraphs of this complaint as if each were fully set forth herein in their entirety.

5.2　Plaintiffs are entitled to punitive damages because Defendant's wrongful acts and omissions were wanton and in conscious disregard of the rights of others.

5.3　Plaintiffs contend that the acts and/or omissions of the Defendant as alleged herein, were committed knowingly and willfully, and amount to malicious, willful, wanton, grossly negligent and/or reckless conduct.

## VI.　DAMAGES

a. *Survival Damages*

6.1　Plaintiffs incorporate by reference the allegations of the previous paragraphs of this complaint as if each were fully set forth herein in their entirety.

6.2　Plaintiffs are entitled to and brings this action in such representative capacity pursuant to either Louisiana law, or in the alternative Texas law, for wrongful death and survival actions.

6.3　As a direct and proximate result of Defendant's conduct as alleged, Plaintiffs seek damages for each of the following:

      a.    past mental anguish suffered by Billie Davis;

      b.    conscious pain and suffering suffered by Billie Davis before his death;

      c.    funeral and burial expenses suffered by Billie Davis's estate; and

      d.    exemplary damages.

### b. *Wrongful Death*

6.4    Plaintiffs are entitled to and brings this action in such representative capacity pursuant to either Louisiana law, or in the alternative Texas law, for wrongful death and survival actions.

6.5    As a direct and proximate result of Defendant's conduct as alleged, Plaintiffs seek damages for each of the following:

      a.    past mental anguish in the form of emotional pain, torment, and suffering;

      b.    future mental anguish;

      c.    past medical expenses;

      d.    future medical expenses;

      e.    loss of inheritance and pecuniary loss; and

      f.    loss of wage-earning capacity sustained in the past.

      g.    loss of companionship and society, love and affection in the past and future.

### c. *Attorney's Fees*

6.6    Plaintiffs seek an award of reasonable and necessary attorney's fees.

## VIII.   JURY DEMAND

7.1    Pursuant to Federal Rule of Civil Procedure 39(b), Plaintiffs hereby demand a trial by jury.

## IX.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendant be cited to appear and answer herein, and that upon final trial hereof, Plaintiffs recover from said Defendant,

17

jointly and severally, all available compensatory damages under state and federal law; punitive damages, attorney's fees, costs of Court, pre-judgment and post-judgment interest at the legal rate, and for any and all further relief, both general and special, legal and equitable to which Plaintiffs may be justly entitled.

                Respectfully submitted,

                WEBSTER VICKNAIR MACLEOD

By:   */s/ Jason C. Webster*
       JASON C. WEBSTER
       Federal Bar No. 39010
       HEIDI O. VICKNAIR
       Federal Bar No. 568715
       RYAN S. MACLEOD
       Federal Bar No. 2164813
       STEVEN E. ALDOUS
       Federal Bar No. 18256
       24 Greenway Plaza, Suite 600
       Houston, Texas 77026
       713.581.3900 (telephone)
       713.581.3907 (facsimile)
       filing@wvmlaw.com

       and

       Jason M. Byrd
       Texas Bar No. 24036303
       jason@txbyrd.com
       The Byrd Law Firm
       448 Orleans Street
       Beaumont, Texas 77701
       (409) 924-0660 – Telephone
       (409) 924-0035 – Facsimile

       ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

On Wednesday, August 27, 2025, the undersigned hereby certifies that the foregoing Response was electronically filed with the Clerk of the Court using the CM/ECF system and Counsel for Defendants will automatically receive notice of such filing in accordance with the Federal Rules of Civil Procedure.

*/s/ Jason C. Webster*
Jason C. Webster
