UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

CRYSTAL MANNING ET AL          CIVIL ACTION NO. 3:25-cv-00871

VERSUS          JUDGE TERRY A. DOUGHTY

LASALLE ET AL          MAG. JUDGE KAYLA D. MCCLUSKY

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Dismiss for failure to state a claim upon which relief can be granted [doc. #193] filed by Defendant LaSalle Correctional Center LLC ("LCC"). The motion is opposed by Crystal Manning As Next Friend of L.D., a Minor; Mariahlee Mansaw As Next Friend of P.M., A Minor; Melissa Hollins As Next Friend of D.H., a Minor, As Wrongful Death Beneficiaries of Billie Davis, Deceased; and Ruby Lee Davis, Individually and As Representative of The Estate of Billie Davis, Deceased (collectively, "Plaintiffs"). [doc. #200]. For the reasons detailed below, **IT IS RECOMMENDED** that the motion be **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

On February 27, 2023, Plaintiffs filed an Original Petition action pursuant to 42 U.S.C. § 1983, as well as state negligence claims, in the 11th Judicial District Court of Harris County, Texas, against Defendants LaSalle Corrections L.L.C. d/b/a LaSalle Correctional Center ("LaSalle Corrections"), Harris County, and Harris County Sheriff's Office. [doc. #1]. Defendant LaSalle Corrections timely filed to remove the action to the Southern District of

Texas on March 27, 2023. During this matter's pendency in the Southern District of Texas, various other Defendants were named and subsequently dismissed, with LCC remaining as the sole Defendant. [doc. #163].

On June 18, 2025, Judge Ellis of the Southern District of Texas granted LaSalle Correction's motion to dismiss pursuant to 28 U.S.C. § 1406(a) and Federal Rule of Civil Procedure 12(b)(3) and transferred the case to the Western District of Louisiana. [docs. #149, 163]. The Court declined to issue a ruling on any other grounds for dismissal. *Id*. Following the transfer of the case, Plaintiffs filed their Third Amended Complaint. [doc. #192].

On November 5, 2025, LCC filed the instant Motion to Dismiss. [doc. #193]. LCC first argues that Ruby Lee Davis ("Ms. Davis") lacks standing to bring any claims in the death of her son, Billie Davis ("Mr. Davis"). LCC asserts that federal law does not provide a proper plaintiff to bring a civil rights action on behalf of a decedent, and, therefore, state law must apply to determine whether Davis has standing to bring this claim. [doc. #193-1]. LCC argues that Louisiana, as the forum state, provides the law which should be used to determine whether a party has standing to file suit. *Id*.

Next, LCC argues that Plaintiffs have failed to plead a plausible claim under any of the requisite elements of Section 1983. *Id*. LCC asserts that Plaintiffs have failed to point to either an explicit policy of LCC which violated Mr. Davis's constitutional rights or plead sufficient factual allegations which establish a custom of excessive force or failure to provide adequate medical care. *Id*. While Plaintiffs allege various other incidents which have occurred at various locations of "affiliated entities," LCC argues that these incidents are insufficient to meet Plaintiffs' burden. *Id*. LCC points to the fact that these "affiliated entities" are not defendants in this suit, and, therefore, cases other than those against LCC cannot be presented as evidence of a

2

persistent and widespread practice. *Id*. Further, LCC contends that, even if each of these incidents did take place in LCC-related facilities, they are insufficiently similar and too temporally distant to reach the level of persistence as to constitute a policy of LCC. *Id*.

To the extent that Plaintiffs have pled sufficient facts to establish a policy, LCC asserts that they have failed to establish that the challenged "policy" was promulgated or ratified by a policymaker of LCC or was maintained with deliberate indifference to an "obvious fact that a specific constitutional violation would follow." *Id*. at 18. Additionally, LCC alleges that Plaintiffs have failed to plead that any policy or custom was the "moving force" behind Mr. Davis's injuries. Because LCC contends that Plaintiffs have failed to allege facts to support a *Monell* claim under Section 1983, it further asserts that Plaintiffs have failed to support a claim for failure to train its officers. *Id*.

In addition, LCC argues that Plaintiffs have failed to plead a plausible claim for negligence. Plaintiffs have alleged negligence claims under Louisiana and, alternatively, Texas law; however, LCC asserts that the negligence claims fail under either set of state law. *Id*. LCC points to the duty-risk analysis under Louisiana law, requiring Plaintiffs to prove each of five elements. *Id*. LCC argues that Plaintiffs have failed to allege the first two elements. *Id*. LCC contends that Plaintiffs reliance on a contract between "Harris County and Southwestern Correctional, LLC d/b/a LaSalle Management Company and LaSalle Corrections, LLC" to prove LCC had a duty to conform to a specific standard of care is misplaced. *Id*. LCC argues that, because it was not a party to the contract, the contract is insufficient to establish any specific duty or standard of care for LCC. *Id*. Additionally, LCC asserts that neither the contract nor Plaintiffs' pleading establish Mr. Davis as a third-party beneficiary.

LCC also contends that Plaintiffs have failed to demonstrate a breach of duty. *Id*. LCC points to Plaintiffs' language that it "was negligent in hiring and training of guards; developing policies and a culture of allowing guard to use excessive force and beat inmates; failing to provide adequate medical care, respond to needs of medical assistance, and monitor inmates in medical distress." *Id*. LCC argues that this language is merely conclusory and fails to plead any specific facts or that any specific employee was negligently hired or trained. *Id*.

LCC also moves for the dismissal of Plaintiffs' claims for vicarious liability under Art. I, § 5 of the Louisiana Constitution. *Id*. LCC argues that Art. I, § 5 of the Louisiana Constitution's protection against unreasonable searches and seizures does not apply to claims of excessive force which occur during pretrial detention. *Id*. Therefore, LCC argues the vicarious liability claims are improper. *Id*. Finally, LCC argues that Texas law should not be applied in this case and, thus, any claims which Plaintiffs assert based on Texas law must be dismissed. *Id*.

On November 19, 2025, Plaintiffs filed an opposition to LCC's Motion to Dismiss. [doc. #200]. First, Plaintiffs assert that Ms. Davis has proper standing to bring these claims under Texas law. Plaintiffs point to Article 3542 of the Louisiana Civil Code which requires the court to analyze which state's policies "would be most seriously impaired if the law were not applied to that issue." Plaintiffs argue that Texas would be the most seriously impaired, and, therefore, Texas law should be applied to the issue of who can bring a wrongful death claim. In support of this, Plaintiffs argue that Texas has the most significant relationship to the case for several reasons, including the fact that all but one Plaintiff is domiciled in Texas, and Texas has a compelling policy interest in regulating the treatment of its detainees. Plaintiffs further note that Louisiana would not be impaired as Louisiana wrongful death statutes are similarly interested in

4

"protecting the family unit."  Additionally, Plaintiffs point back to the contract between Harris County and LCC, which requires compliance with Texas laws while detaining Mr. Davis.

Next, Plaintiffs contend that they have properly pled a claim under Section 1983. Plaintiffs argue that their Third Amended Complaint established liability under *Monell* as it "set forth specific factual allegations describing misconduct that has occurred at LaSalle facilities." *Id*. at 10.  Plaintiffs assert that LCC's reliance on *Martinez* is improper.  *Martinez v. Nueces County, Texas*, 71 F.4th 385 (5th Cir. 2023).  Specifically, Plaintiffs argue that the facts of *Martinez* are distinguishable from this case as their Third Amended Complaint outlines specific actions taken by officers and the harm that Mr. Davis suffered as a result.  Additionally, Plaintiffs allege that LaSalle entities should be "treated as a single entity with regard to the custom and policy of depriving inmates of their constitutional rights."  *Id*. at 14.  Taken together, Plaintiffs allege these facts sufficiently demonstrate a pattern constituting a policy at LaSalle.

Further, Plaintiffs point to allegations in their Third Amended Complaint which allege that the Assistant Warden, as well as a major, at LCC was present when the incident involving Mr. Davis occurred and did not intervene, amounting to ratification of the officers' behavior by a policymaker.  *Id*.  Plaintiffs also point to the delay in Mr. Davis' receipt of medical care, which they argue demonstrates deliberate indifference.  This delay in medical care along with the alleged custom of excessive force, Plaintiffs assert, is the moving force behind Mr. Davis's injuries.  *Id*.  Plaintiffs contend that these facts, taken together, have sufficiently pled a *Monell* claim.  Given that LCC's arguments against Plaintiffs' failure-to-train claim rely upon their *Monell* claim being insufficiently pled, Plaintiffs assert that their proper pleading of *Monell* demonstrates the viability of their failure to train claim as well.

Next, Plaintiffs argue that they have properly pled a negligence claim under Louisiana law. Plaintiffs point to precedent which they argue establishes that prisons bear a duty to ensure the safety of their prisoners. *Id*. This law, Plaintiffs assert, works in tandem with the contract between LaSalle and Harris County. Plaintiffs contend that LCC cannot disavow their contractual obligations while reaping the benefits, arguing that because it benefitted financially from the placement of Harris County inmates, it also had a duty to provide reasonable care of those inmates.

Finally, Plaintiffs reassert their position that Texas law should apply as to whether or not LCC was negligent in the care of Mr. Davis. They contend that because LCC failed to raise address their negligence claims under Texas law, arguing only that Louisiana law is applicable LCC's motion should be denied. In accordance with this, Plaintiffs contend that they are entitled to punitive damages per the applicable Texas law.

On November 26, 2025, LCC filed a reply to Plaintiffs' opposition, [doc. #203] reiterating its position that Louisiana law should be the applicable negligence standard and that Plaintiffs had failed to allege sufficient facts to assert their *Monell* and state law claims.

Accordingly, the matter is now ripe.

## **LEGAL STANDARD**

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading states a claim for relief when, inter alia, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." FED. R. CIV. P. 8(a)(2).

To withstand a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 667-668 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Plausibility does not equate to possibility or probability; it lies somewhere in between.  *Iqbal*, 556 U.S. at 556.  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *See Twombly*, 550 U.S. at 556.  Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).  A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely.  *Twombly*, 550 U.S. at 556.

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions.  *Iqbal*, 556 U.S. at 678.  A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id*.  Moreover, Rule 12(b)(6) authorizes courts to dismiss a claim on the basis of a dispositive issue of law, notwithstanding that it otherwise might be well-pleaded.  *See Neitzke v. Williams*, 490 U.S. 319, 326-327 (1989) (citations omitted).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision."  *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. App'x. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted).  Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory.  Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal

7

argument." *Skinner v. Switzer*, 562 U. S. 521, 530 (2011) (citation omitted). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

## LAW AND DISCUSSION

The parties agree that Louisiana's choice of law rules determine which state's law applies. [docs. #200, 203]; *see also Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005). First, "if the laws of the states do not conflict, then no choice of law analysis is necessary, and [courts should] simply apply the law of the forum state." *Id*; *see also Champagne v. Ward*, 893 So. 2d 773, 786 (La. 2005). Further, "[u]nder Louisiana's choice of law rules, a sweeping determination that the law of one state applies to the case, as opposed to an issue in a case, constitutes a derogation of the appropriate analysis." *Favaroth v. Appleyard*, 785 So. 2d 262, 265 (La. App. 4 Cir. 2001). "When a conflict exists with regard to more than one issue, each issue should be analyzed separately." *Id*; *see also* LA. CIV. CODE art. 3515, comment (d) ("This Article does not prohibit dépeçage[, however] [t]he unnecessary splitting of the case should be avoided, especially when it results in distorting the policies of the involved states.").

Accordingly, the Court will examine each of the contested issues individually first to determine which state's laws apply and whether, under the applicable law, dismissal is warranted.

## I.    Proper Plaintiffs

Under Federal Rule of Civil Procedure 17, only a "real party in interest" may bring suit in

federal court. *United States v. 936.71 Acres of Land*, 418 F.2d 551, 556 (5th Cir. 1969). In the context of a suit for wrongful death resulting from an unconstitutional use of force, a "real party in interest" is defined by state law. *Id*. In Louisiana, to recover on a claim for survival or wrongful death, a plaintiff must fall within the defined hierarchy of beneficiary classes under Civil Code Articles 2315.1 and 2315.2, which prescribe the decedent's surviving father and mother as the proper beneficiaries to bring a wrongful death or survival action when the decedent has no surviving spouse or child. *See Udomeh v. Joseph*, 103 So. 3d 343, 346 (La. 2012).

However, Plaintiffs assert that Texas's law for proper beneficiaries should be applied, rather than Louisiana law.

Louisiana's general choice of law rules are set forth in Louisiana Civil Code article 3542. *Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 487 (5th Cir. 2001). Article 3542 provides:

> an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered; and (2) the policies referred to in Article 3515, as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.

LA. CIV. CODE art. 3542. Louisiana Civil Code article 3515, in turn, is the "general and residual rule" that guides and informs Louisiana's approach to choice of law and is closely paralleled by article 3542. *Marchesani*, 269 F.3d at 486. Article 3515 provides that, except as otherwise specified in the part of the Civil Code addressing choice of law:

> an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the

9

> interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

LA. CIV. CODE art. 3515. Louisiana Civil Code articles 3543 through 3546 provide more specific choice of law rules which dictate the appropriate choice of law in certain scenarios. LA. CIV. CODE art. 3542, comment (b). When applicable, those articles generally prevail over the more generalized rules provided in article 3542. *Id*; *see also* LA. CIV. CODE art. 3547

However, none of the specific choice of law provisions apply to the issue of proper plaintiffs; therefore, the Court applies articles 3542 and 3515. Pursuant to articles 3515, the Court begins the analysis by identifying "the pertinent contacts of each state," including "the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered." LA. CIV. CODE arts. 3515, 3542; *see also Bell v. Foster Wheeler Energy Corp.*, No. 15-6394, 2017 U.S. Dist. LEXIS 31118 (E.D. La. Mar. 6, 2017); *Marchesani*, 269 F.3d at 487. The Court first turns to the place of conduct and injury. In this case, it is clear that Louisiana has the greatest pertinent connection. All of the alleged tortious conduct took place in the state of Louisiana. Thus, this factor weighs in favor of applying Louisiana law.

The next contact to identify is the place of domicile. Under Louisiana choice of law rules, courts look to the domicile of the decedent when considering a survival action. *See* LA. CIV. CODE art. 3544, comment (b). Mr. Davis, for the majority of his life, was officially domiciled in Texas. Each of the plaintiffs in this case, with the exception of one, are domiciled in Texas as well. While LCC is considered to be a domiciliary of Louisiana, the majority of domicile connections are found in Texas. Therefore, this factor weighs in favor of applying Texas law to this issue.

10

Having identified the relevant contacts, the second step pursuant to articles 3515 and 3542 requires the Court to consider the state policies that might be implicated in the choice of law. *See* LA. CIV. CODE arts. 3515, 3542; *Marchesani,* 269 F.3d at 487. Both Texas and Louisiana have policy interests which could be implicated by the choice of law for proper plaintiffs. "[Louisiana], like all states, has an interest in regulating conduct within its borders. [Texas], on the other hand, has an interest in seeing its injured citizens fully compensated— irrespective of where their injury occurs." *Bell*, 2017 U.S. Dist. LEXIS 31118 at *9. "After all, even when Louisiana domiciliaries are not injured in Louisiana, the effects and especially the expense of an injury will surely be felt here." *Id*. at 10.

Next, the Court must evaluate the "strength and pertinence" of each state's policy interests in light of "the policies and needs of the interstate and international systems" to determine which state's policies would be "most severely impaired" if its law was not applied. *See* LA. CIV. CODE arts. 3515, 3542; *Marchesani*, 269 F.3d at 487. In looking to the court's logic in *Bell*, the undersigned concludes that Texas's interests are stronger and would be more severely impaired if its survival law was not applied under these circumstances. *See Bell*, 2017 U.S. Dist. LEXIS 31118 at *14.

In *Bell*, the court noted that "in the tort context, Louisiana choice of law rules distinguish 'issues pertaining to standards of conduct and safety' from 'issues of loss distribution and financial protection.'" *Id*. at 10 (comparing LA. CIV. CODE art. 3543 with LA. CIV. CODE art. 3544. Looking to these choice of law rules, the court in *Bell* concluded that "conduct-regulating rules are, generally speaking, tied to territoriality whereas loss-compensating rules are tied to domicile." *Id*. at 13 (citing S. Symeonides, *Louisiana's New Law of Choice of Law for Tort Conflicts: An Exegesis*, 66 TUL. LAW REV. 677, 703 (1992). "Because the availability of a

survivorship action is better characterized as a loss-compensating rule and not a conduct-regulating rule, the personal contacts of this litigation to [Texas] are more significant than the territorial contacts of this litigation to [Louisiana] with respect to the survivorship issue." *Id*. at 15.

As was the case in *Bell*, the alleged wrongful conduct and injury occurred in one state (Louisiana), while the consequences of that conduct and injury are felt most acutely in another state (Texas).. As such, "[Texas's] interests would suffer the greater impairment if a [Texas] domiciliary's injury remained unremedied by the operation of another state's law. [Louisiana's] interests, in contrast, cannot be viewed as greatly impaired by the application of [Texas] law under these circumstances." Like Idaho in the *Bell* court's analysis, Louisiana does not prohibit all survival actions in all circumstances. It follows that, if the application of Louisiana's survivorship provision in circumstances not recognized in Idaho did not completely undermine Idaho public policy, the inverse must be true - the application of Texas law in circumstances not recognized in Louisiana cannot be said to completely undermine Louisiana public policy.

Given Texas's strong public policy interests in ensuring that its domiciliaries are compensated for injuries, regardless of where those injuries occurred, and considering that Louisiana's policy with respect to its survivorship law will not be greatly undermined by the application of Texas law in these circumstances, the Court concludes that Texas's policy interests would suffer the greater impairment if its law was not applied. Therefore, Texas law will apply to determine the issue of proper plaintiffs to bring a wrongful death claim in this case. As Texas allows parents to bring these wrongful death and survivorship claims, even when a decedent has surviving children, the Court finds that Ms. Davis is a proper plaintiff.

Accordingly, **IT IS RECOMMENDED** that LCC's Motion to Dismiss be **DENIED** insofar as it seeks dismissal of Ms. Davis as a Plaintiff.

## II.        Negligence Claims

The Court now turns to Plaintiffs' state negligence claims, which they allege are proper under Louisiana law or, in the alternative, Texas law.  LCC asserts that Louisiana law must apply and that Plaintiffs have failed to state a claim under that law.  The Court first determines which state law applies.

### A.        Choice of Law

To determine the applicable state law, the Court once more begins its analysis with the rules as outlined in Louisiana Civil Code articles 3515 and 3542.  However, unlike the previous analysis, the Court is guided by one of the more specific aforementioned codes.  Article 3543 is an exception to the general tort choice of law rule in Article 3542.  It applies only to issues pertaining to standards of conduct and safety.  *See* LA. CIV. CODE art. 3543.  This means that application of Article 3543 is limited to circumstances in which the legal question concerns the safety-related conduct of the defendant at the moment of the injurious act.  *Babin v. Caddo East Estates I, Ltd.,* 2013 U.S. Dist. LEXIS 121130 at *5.  "Standards of conduct and safety rules involve issues like strict liability, the appropriate standard of care, statutory health and safety provisions, and the like."  *Id*.

"In explaining this Article's relationship to Article 3542, the comments make clear that Article 3543 will 'prevail' over Article 3542 when its rules are 'more specific' to the issues." *McGee v. Arkel Intern., LLC*, 671 F.3d 539, 543 (5th Cir. 2012) (quoting LA. CIV. CODE art. 3543, cmt. (b)).  "The law of the state in which both the wrongful conduct and resulting injury occurred will apply 'regardless of the domicile of the parties or any other factors.'"  *Id*. (quoting

13

LA. CIV. CODE art. 3543 cmt. (d)).   Here, the alleged wrongful conduct and resulting injury

occurred in Louisiana.  Accordingly, Louisiana's substantive law applies to the merits of the

negligence claims.

### B.    Motion to Dismiss

Given that Louisiana law controls in the instant case as to the state negligence claims, the

Court will look to Plaintiffs' pleading based on the requisite inquiries for Louisiana Civil Code

articles 2315 and 2316.  Articles 2315 and 2316 of the Louisiana Civil Code provide that every

person is responsible for damages caused by his fault or negligence. *See Pitre v. La. Tech. Univ.*,

673 So. 2d 585, 589 (La. 1996).  Under this "duty-risk analysis," the plaintiff must prove that: 1)

the conduct in question was a cause-in-fact of the resulting harm; 2) the defendant owed a duty

of care to the plaintiff; 3) the defendant breached that requisite duty; 4) the risk of harm was

within the scope of protection afforded by the duty breached, and; 5) the plaintiff sustained

actual damages.  *Id*. at 589-90.  If the plaintiff fails to satisfy one of these elements, the

defendant is not liable.  *Id*. at 590; *Bursztajn v. United States*, 367 F.3d 485, 489 (5th Cir. 2004).

LCC argues that Plaintiffs' negligence claims should be dismissed under this standard as

they have failed to allege that LCC owed a duty to Mr. Davis as a "third-party beneficiary" of the

contract between Harris County and Southwestern Correctional.  [doc. #193-1, p. 21-22].  To the

extent Plaintiffs can plead that there was a duty to Mr. Davis, LCC contends that there has been

no breach of that duty pleaded by Plaintiffs.  *Id*. at 22.  The undersigned disagrees.

While LCC is correct that the duty correctional officers owe to inmates is not absolute,

"the officer must…do what is reasonable under the circumstances." *Griffis v. Travelers Ins. Co.*,

273 So. 2d 523, 526 (La. 1973). Louisiana courts have held that confining authorities owe

prisoners a "general duty…to save him from harm" and hold them liable for "prisoner's injury or

14

death resulting from a violation of such duty." *Manuel v. City of Jeanerette*, 702 So. 2d 709, 712 (La. Ct. App. 1997) (citing *Barlow v. City of New Orleans*, 257 LA. 91, 241 So. 2d 501, 504 (La. 1970)). Further, under Louisiana law, prison authorities owe a duty to provide inmates with reasonable medical care. *Newsome-Goudeau v. La.*, No. 17-909, 2020 U.S. Dist. LEXIS 174436, 2020 WL 5665615, at *6 (W.D. La. Sept. 22, 2020) (citing *Harper v. Goodwin*, 41,053 (La. Ct. App. 2 Cir. 5/17/06); 930 So. 2d 1160, 1163); *Richard v. Gautreaux*, No. 24-419-SDD-EWD, 2025 LX 425442 (M.D. La. Sep. 25, 2025). "The standard of care imposed upon the confining authority in providing for the medical needs of prisoners is that those services be adequate and reasonable." *Herrin v. E. Baton Rouge Sheriff's Office*, No. 15-CV-82-SDD-SCR, 2015 U.S. Dist. LEXIS 107867 (M.D. La. Aug. 17, 2015) (citing *Landry v. East Baton Rouge Parish Sheriff's Office*, 2014-0733 (La. App. 1 Cir. 3/9/15), 168 So. 3d 378, 2015 La. LEXIS 1532, 2015 WL 1033767; *Jacoby v. State*, 434 So.2d 570, 573 (La.App. 1st Cir.), *writ denied*, 441 So.2d 771 (La. 1983); *see also Elsey v. Sheriff of Parish of East Baton Rouge*, 435 So.2d 1104, 1106 (La.App. 1st Cir.), *writ denied*, 440 So.2d 762 (La. 1983); *Wells v. La. Dep't of Pub. Safety and Corr.*, 46,428, p. 27 (La.App.2d Cir.8/24/11), 72 So.3d 910, 926, *writ denied*, 11-2637 (La.2/10/12), 80 So.3d 474; *Cole v. Acadia Parish Sheriff's Dept.*, 07-1386, p. 5 (La.App. 3d Cir.11/5/08), 998 So.2d 212, 216, *writ denied*, 08-2875 (La.2/6/09), 999 So.2d 784; *Calloway v. City of New Orleans*, 524 So.2d 182, 186 (La .App. 4th Cir.), *writ denied*, 530 So.2d 84 (La.1988).

Given the clear precedent of Louisiana law which places a duty upon entities, such as LCC, to protect inmates in their care and to provide adequate medical care, the issue moves to whether Plaintiffs have adequately pled a breach of that duty by LCC. Accepting Plaintiffs'

factual allegations as true, as the Court must do at this stage, they have sufficiently pled a plausible claim of negligence, at least in part.

Plaintiffs allege several actions which they argue constitute negligence. These include: (1) negligent hiring of guards; (2) negligent training of guards; (3) developing policies and a culture of allowing guards to use excessive force against inmates; (4) developing policies and a culture of allowing guards to beat inmates; (5) failing to provide adequate medical care to inmates; (6) failing to respond when inmates need medical assistance; and (7) failing to monitor inmates in distress. [doc. #192, p. 14].

Turning first to the claims of developing policies and a culture of using excessive force and allowing guards to beat inmates, the Court finds that Plaintiffs have pled sufficient facts to survive a motion to dismiss. Specifically, Plaintiffs allege a pattern of similar constitutional violations at other LaSalle facilities. *Id*. at 11-13. *See Sabbie v. Southwestern Corr., L.L.C.*, 2017 WL 5907865 at *4 (E.D. Tex. 2017), *report and recommendation adopted*, 2017 WL 5905270 at *7 (E.D. Tex. 2017). Case law involving LaSalle's various facilities has made clear to them what constitutes excessive force and unconstitutional denial of medical care and what heir policies and customs should be and that incidents across their facilities may be considered, particularly at this stage of litigation. *See Joseph v. Franklin*, 2023 U.S. Dist. LEXIS 158402 at *23 (W.D. La. Aug. 21, 2023); *Mathis v. Southwestern Correctional, L.L.C.*, 2021 U.S. Dist. LEXIS 172515, 2021 WL 4129123 (E.D. Tex. 2021) (denial of medical care); *Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493, 509 (5th Cir. 2022) (use of excessive force and denial of medical care); *Sabbie*, 2017 WL 5907865 at *4. Thus, Plaintiffs have sufficiently pled negligence as to this claim.

The same result follows for Plaintiffs' claims of failure to provide adequate medical care to inmates, respond when inmates need medical assistance, and monitor inmates in distress. Plaintiffs allege that by 9:13 a.m. on the date of the incident, Davis had suffered from trauma to his head and had been beaten so severely as to knock out several of his teeth.  [doc. #192, p. 6-7]. Despite this, Plaintiffs allege that Nurse Warren had "completed" all evaluation of Davis and returned to medical with several of his teeth in a glove by 9:17 a.m.  *Id*.  These four minutes included time to transport Davis from the four-way to medical.  *Id*.  Plaintiffs allege that, despite obvious signs of medical distress from Davis, including slumping over, falling from a sitting position, and requiring assistance to walk, Davis was not seen by medical again until 10:03 a.m. when Davis was found unresponsive.  *Id*.  Between 9:17 and 10:03 a.m., Davis was allegedly left unattended in restraints with little-to-no supervision from either officers or medical staff.  *Id*. Plaintiffs have sufficiently  alleged that LCC was negligent in failing to provide adequate medical care, responding to the need for medical assistance, and monitoring inmates in distress.

Finally, the Court turns to Plaintiffs' claims of negligent hiring and training of guards. As to these two claims, Plaintiffs have failed to plead sufficient facts.  Plaintiffs point to no particular hiring or training policies by LaSalle which would have contributed to the incident in question.  While there are sufficient facts to support a claim of an implicit policy or culture encouraging this behavior, a plaintiff who alleges negligent hiring and training must show more. Plaintiffs have failed to identify any specific policies or customs for hiring or training, or a specific deficiency in the program for training, which are casually related to the Plaintiffs' injuries.  Thus, Plaintiffs have failed to plead sufficient facts to support plausible claims of negligent training and hiring.

Accordingly, **IT IS RECOMMENDED** that LCC's Motion to Dismiss be **GRANTED IN PART** as to Plaintiff's claims of negligent training and hiring.  **IT IS RECOMMENDED** that LCC's motion be **DENIED** as to all other claims of negligence.

### III.    Section 1983 Claims

Plaintiffs also allege violations of 42 U.S.C. § 1983 for violations of Davis's rights under the Fourteenth Amendment to receive adequate medical care and  to be free from the use of excessive force.  These are, in essence, Section 1983 *Monell* claims against LCC for use of excessive force and denial of medical care.

The United States Supreme Court has held that municipalities and other local governmental bodies are "persons" within the meaning of Section 1983.  *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 689 (1978).  The Fifth Circuit extended municipal corporate liability under Section 1983 to include private prison management corporations and their employees.  *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003). "The test to determine liability for a private prison-management corporation under § 1983 is more or less identical to the test employed to determine municipal or local government liability." *Coleman v. LaSalle Corr. Ctr.*, 2008 U.S. Dist. LEXIS 122580, 2008 WL 2465989, at *4-5 (W.D. La. 2008) (citing *Phillips v. Corr. Corp. of America*, 2006 U.S. Dist. LEXIS 29462, 2006 WL 1308142 at *3 (W.D. La. 2006)); *see also Monell*, 436 U.S. at 694.

"To succeed on a *Monell* claim, plaintiffs 'must show (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom).'" *Austin v. City of Pasadena, Tex.*, 74 F.4th 312, 2023 WL 4569562, at *12 (5th Cir. 2023) (citing *Newbury v. City of Windcrest*, 991 F.3d 672, 680 (5th Cir. 2021)).  "[T]he critical question is to decide who is the

18

final policymaker, which is an issue of state law." *See Advanced Technology Building Solutions, L.L.C. v. City of Jackson, Miss.*, 817 F.3d 163, 166 (5th Cir. 2016), *cert. den.*, 137 S. Ct. 297 (U.S. 2016) (citing *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993)).

"The first element, the existence of a policy or custom, is satisfied if a practice is 'so persistent and widespread as to practically have the force of law.'" *Austin,* 74 F.4th 312, 2023 WL 4569562, at *13 (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "Allegations of an isolated incident are not sufficient to show the existence of a custom or policy." *Austin*, 74 F.4th 312, 2023 WL 4569562, at *13 (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992), cert. den., 506 U.S. 973 (1992)). "What must be shown is 'that the policy itself violated federal law or authorized or directed the deprivation of federal rights.'" *Austin*, 74 F.4th 312, 2023 WL 4569562, at *12 (citing *Johnson v. Deep East Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004)).

Plaintiffs allege a pattern of similar constitutional violations at other LaSalle facilities demonstrate the existence of a policy. [doc. #192, p. 10-13]. *See Sabbie*, 2017 WL 5907865 at *4, *report and recommendation adopted*, 2017 WL 5905270 (E.D. Tex. 2017). As discussed *infra*, accepting Plaintiffs' allegations as true for purposes of this motion, they have adequately alleged a practice that fairly represents the policies of LCC for use of excessive force and denial of medical care and that those customs or policies were the moving force behind the violations of Mr. Davis's constitutional rights. *See McWilliams v. City of Houston*, 2022 WL 17337820, at *6 (5th Cir. 2022) (citing *Webb v. Town of St. Joseph*, 925 F.3d 209, 214 (5th Cir. 2019)).

Plaintiffs have generally alleged that the warden of LCC was the final policymaker for the correctional facility. [doc. #192]. The identity of a legally authorized policymaker for purposes of *Monell* is a question of law. *See Groden v. City of Dallas, Texas*, 826 F.3d 280, 282

(5th Cir. 2016); *Carrillo v. Buendia*, 2020 WL 4584380, at *19 (S.D. Tex. 2020). The warden's identity "need not be pled in the complaint to survive a motion to dismiss." *Balle v. Nueces County, Tex.*, 952 F.3d 552, 559 (5th Cir. 2017); *Groden*, 826 F.3d at 282 ("[F]or purposes of Rule 12(b)(6), we hold that a plaintiff is not required to single out the specific policymaker in his complaint; instead, a plaintiff need only plead facts that show that the defendant or defendants acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker."); *Carrillo*, 2020 WL 4584380 at *19. "Therefore, if the factual allegations are sufficient to support the claim, the failure to specify a policymaker is not a basis for granting a Rule 12 motion to dismiss." *Id*; *see also Balle*, 952 F.3d at 559; *Groden*, 826 F.3d at 282. Further, the warden themselves need not be a defendant in the action to be the final policymaker for purposes of a *Monell* claim. *Moore v. LaSalle Corr. Inc.*, 2025 LX 249412 at *9 (W.D. La. July 18, 2025) ("Plaintiffs can still assert *Monell* liability for a constitutional violation based on Warden Hanson, as the policymaker, even though he has been dismissed.").

Additionally, the Third Amended Complaint is replete with allegations that LaSalle and its warden were aware of the behaviors and ratified them. Plaintiffs' Third Amended Complaint states that the Assistant Warden and a major personally witnessed the beating of Mr. Davis and failed to intervene and that LaSalle later promoted one of those supervisors to Warden after the incident. [doc. #192].

Further, Plaintiffs have adequately demonstrated deliberate indifference. The Fourteenth Amendment protects a pretrial detainee's right "not to have [his] serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001) (citations omitted). Plaintiffs needed only raise fact disputes over whether each LCC (1) "was 'aware of facts from which the inference could be drawn that a

20

substantial risk of serious harm exists,'" and (2) "actually drew that inference." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020). The Fifth Circuit has made clear that events strikingly similar to this, involving the same defendant, amounted to deliberate indifference to an inmate's medical needs. *Moore*, 41 F.4th at 502-03. Thus, taking Plaintiffs' allegations as true, there are sufficient facts pled to support a claim under Section 1983.

Finally, LCC alleges that Plaintiffs' claims of vicarious liability are improper and should be dismissed as to both the Section 1983 claims and claims pursuant to Art. I, § 5 of the Louisiana Constitution. [doc. #193]. As to Plaintiffs' Section 1983 claims, LCC is correct that the doctrine of respondeat superior does not apply to Section 1983 claims. *Connick v. Thompson*, 563 U.S. 51, 62 (2011); James v. Harris Cnty., 577 F.3d 612, 617 (5th Cir. 2009). Therefore, LCC cannot be held liable for Section 1983 violations pursuant to respondeat superior.

However, Plaintiffs' Third Amended Complaint seeks to hold LCC vicariously liable for the alleged negligence of its employees, which is distinct from the Section 1983 claims against them. [doc. #192, p. 14]. *See Barrios-Barrios v. Clipps*, 825 F.Supp.2d 730, 733. (E.D. La. Oct. 20, 2011) (holding that although the doctrine of respondeat superior clearly did not apply to the plaintiffs' Section 1983 claims against the City of New Orleans, it did apply to the plaintiff's state law claims).

Turning to the next claim, Plaintiffs allege "Defendant is liable for its officer's actions in the course and scope of their employment by denying Davis's rights under Article One Section 5 of the Louisiana Constitution of 1974." [doc. #192, p. 13]. Our sister courts have found that Art. I, § 5 of Louisiana's Constitution was analogous to the federal Fourth Amendment proscribing unreasonable searches and seizures in another case alleging a police officer used excessive force. *Thomas v. Town of Jonesville*, 2013 WL 265235, *6 (W.D. La. Jan. 23, 2013) (citing *Carter v.*

21

*St. John Baptist Parish Sheriff's Office*, No. 11-1401, 2012 U.S. Dist. LEXIS 68484, 2012 WL 1752682, *7 (E.D. La. May 16, 2012)); *see also Molette v. City of Alexandria*, 2007 WL 2174623, *4 n. 10 (W.D. La, Jul. 25, 2007) (dismissing Plaintiff's unreasonable search and seizure claims under the Louisiana constitution because "Louisiana law is nearly identical to federal law with respect to unreasonable search and seizure claims" and the Court already determined that law enforcement did not violate the Plaintiff's Fourth Amendment rights under the federal Constitution).

Plaintiffs have failed to cite, and this Court has been unable to locate, a single case specifically supporting the contention that Art. I, § 5 of Louisiana's Constitution offers broader protection against unreasonable searches and seizures than the U.S. Constitution's Fourth Amendment. The Fifth Circuit has made clear that the Fourth Amendment's protections against excessive force do not apply to pretrial detainees. *Valencia v. Wiggins*, 981 F.2d 1440 (5th Cir. 1993) (holding that the Due Process Clause of the Fifth or Fourteenth Amendment, rather than the Fourth Amendment, is the appropriate constitutional basis for pretrial detainee excessive force lawsuit under Section 1983); *see also Brothers v. Klevenhagen*, 28 F.3d 452 (5th Cir. 1993). An arrestee has become a pretrial detainee "after the incidents of arrest are completed, after the plaintiff has been released from the arresting officers custody, and after the plaintiff has been in detention awaiting trial for a significant period of time." *Valencia*, 981 F.2d at 1444. There is no dispute that Mr. Davis fits these criteria and was a pretrial detainee, which shifts the appropriate avenue for their claims from the Fourth Amendment to the Fourteenth Amendment. Given that Art. I, § 5 is meant to be analogous to the Fourth Amendment, it follows that it was also the inappropriate avenue for Plaintiffs' claims.

Therefore, insofar as Plaintiffs intended to allege vicarious liability against LCC for their Section 1983 claims and for their claims via Art. I, § 5 of the Louisiana Constitution, they have failed to state a claim.  They have, however, properly alleged vicarious liability against LCC as to their state law negligence claims.

Accordingly, **IT IS RECOMMENDED** that LCC's motion be **GRANTED** insofar as it seeks dismissal of Plaintiffs' Section 1983 claims based on vicarious liability and their claims under Art. I, § 5 of the Louisiana Constitution, but **DENIED** as to the remaining claims.

### CONCLUSION

For the reasons stated above,

**IT IS RECOMMENDED** that LCC's motion [doc. #193] be **GRANTED IN PART** and **DENIED IN PART**.  **IT IS RECOMMENDED** that the motion be **GRANTED** insofar as it seeks dismissal of Plaintiffs' claims of negligent training and hiring and its claims based on vicarious liability under Section 1983 and under Art. I, § 5, of the Louisiana Constitution, and these claims should be **DISMISSED WITH PREJUDICE**.  **IT IS RECOMMENDED** that the motion be **DENIED** as to all other claims.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party,

except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See Douglass v. U.S.A.A.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

In Chambers, at Monroe, Louisiana, on this 18th day of June, 2026.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE