UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| CRYSTAL MANNING, *et al.*, Plaintiffs, | * * * | CIVIL ACTION NO.: 3:25-cv-00871 |
| VERSUS | * * | JUDGE TERRY DOUGHTY |
| LASALLE CORRECTIONS, LLC, *et al.*, Defendants. | * * * | MAGISTRATE JUDGE KAYLA McCLUSKY |
| ********************************* | * | **JURY TRIAL REQUESTED** |

**LASALLE CORRECTIONAL CENTER, L.L.C.'S WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (DOC. 207)**

**NOW INTO COURT**, through undersigned counsel, comes Defendant, LaSalle Correctional Center, L.L.C. ("LCC"), who respectfully submits the following written objections to the Magistrate Judge's Report and Recommendation ("R&R") (Doc. 207). For the reasons explained below, this Court should reject and/or modify certain identified portions of the Magistrate Judge's R&R as described herein.

# TABLE OF CONTENTS

**Page**


INTRODUCTION .......... 1

STANDARDS OF REVIEW .......... 2

ARGUMENT .......... 3

I. Ruby Lee Davis lacks standing. .......... 3

A. The forum state's law applies to determine standing for § 1983 claims. .......... 4

B. Louisiana's choice of law provisions require application of Louisiana law in determining standing to bring state law negligence claims. .......... 7

II. Plaintiffs failed to plead a plausible claim for *Monell* liability. .......... 12

A. Plaintiffs failed to adequately plead a custom under *Monell*. .......... 13

1. *Plaintiffs' examples are not sufficiently similar.* .......... 14

2. *Plaintiffs' examples are not sufficiently numerous.* .......... 17

B. Plaintiffs failed to adequately plead the purported custom was the "moving force" of any alleged constitutional violation. .......... 18

C. Plaintiffs failed to plead a claim under single business enterprise theory. .......... 19

D. Plaintiffs failed to adequately plead that a policymaker ratified the alleged unconstitutional conduct. .......... 21

III. Plaintiffs' failure to train claim under § 1983 should be dismissed. .......... 22

IV. Plaintiffs cannot recover punitive damages for alleged violations of state law. .......... 24

CONCLUSION .......... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.F. v. St. Tammany Par. Sch. Bd.*,
No. 23-7426, 2025 LX 85520 (E.D. La. Apr. 25, 2025)........................................................23

*Abraugh v. Altimus*,
26 F.4th 298 (5th Cir. 2022) ..............................................................................4, 6

*Alvarado v. CITGO Petro. Corp.*,
No. 25-40455, 2026 U.S. App. LEXIS 6463 (5th Cir. Mar. 4, 2026) ......................................3

*Anderson v. Marshall Cnty., Miss.*,
637 F. App'x 127 (5th Cir. 2016) ..........................................................................22

*Armstrong v. Ashley*,
60 F.4th 262 (5th Cir. 2023) ..............................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................2, 3

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*,
520 U.S. 397 (1997)..........................................................................................23

*Bell Alt. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................2

*Bell v. Foster Wheeler Energy Corp.*,
No. 15-6394, 2017 U.S. Dist. LEXIS 31118 (E.D. La. Mar. 6, 2017) .............................11, 12

*Burnett v. Grattan*,
468 U.S. 42 (1984)..........................................................................................4

*City of Canton, Ohio v. Harris*,
489 U.S. 378 (1989)..........................................................................................22

*Cabrera v. S. Health Partners, Inc.*,
No. 9:23-CV-80-MJT, 2024 U.S. Dist. LEXIS 147586 (E.D. Tex. July 3, 2024) ..........................5

*Damond v. City of Rayville*,
127 F.4th 935 (5th Cir. 2025) ..............................................................................16, 17

*Davis v. FEC*,
554 U.S. 724 (2008)..........................................................................................4

*Davis v. La. State Univ.*,
876 F.2d 412 (5th Cir. 1989) ....................................................................................5

*De Peguero v. Mun. of San Juan*,
No. 14-1812 (JAG), 2017 U.S. Dist. LEXIS 228620 (D.P.R. Mar. 31, 2017) ..........................5

*Direct Steel, LLC v. Tri-C Civil Constr., LLC*,
No. 2:26-cv-00074-ASJ-JVM, 2026 U.S. Dist. LEXIS 143184 (E.D. La. June 29, 2026) ....................................................................................................20

*Edwards v. City of Balch Springs*,
70 F.4th 302 (5th Cir. 2023) ....................................................................................17

*Gomez v. Galman*,
18 F.4th 769 (5th Cir. 2021) ....................................................................................23

*Groden v. City of Dallas, Tex.*,
826 F.3d 280 (5th Cir. 2016) ....................................................................................21

*Hankins v. Wheeler*,
No. 21-1129, 2026 U.S. Dist. LEXIS 125737 (E.D. La. June 8, 2026)............................22, 23

*Jackson v. Tanfoglio Giuseppe, S.R.L.*,
615 F.3d 579 (5th Cir. 2010) ....................................................................................20

*Johnson v. Harris Cnty.*,
83 F.4th 941 (5th Cir. 2023) ....................................................................................2, 3

*Lazard v. Estrada*,
No. 6:21-CV-04042, 2022 U.S. Dist. LEXIS 56287 (W.D. La. Mar. 4, 2022), *adopted by*, No. 6:21-CV-04042, 2022 U.S. Dist. LEXIS 54917 (W.D. La. Mar. 25, 2022)....................................................................................................25

*Lonzo v. Lonzo*,
2017-0549 (La. App. 4 Cir 11/15/17), 231 So. 3d 957 ......................................................7, 11

*Martinez v. Nueces Cnty.*,
71 F.4th 385 (5th Cir. 2023) ....................................................................................14, 18, 19

*McGee v. Arkel Int'l, LLC*,
671 F.3d 539 (5th Cir. 2012) ....................................................................................9, 10, 11

*McGee v. Arkel Int'l, LLC*,
No. 08-4704, 2012 U.S. Dist. LEXIS 172475 (E.D. La. Dec. 5, 2012)..............................9, 10

*Melancon v. La.*,
No. 11-1794, 2013 U.S. Dist. LEXIS 42955 (W.D. La. Mar. 26, 2013)..................................5

*Miller v. C.M.S. Corr. Med. Serv.*,
No. 08-3014-NLH-AMD, 2010 U.S. Dist. LEXIS 24156 (D.N.J. Mar. 16, 2010) ....4

*Moore v. Wayne Smith Trucking, Inc.*,
No. 14-1919, 2015 U.S. Dist. LEXIS 14004 (E.D. La. Feb. 4, 2015) ....9, 10

*Nunez v. Pinnacle Homes, L.L.C.*,
2015-0087 (La. 10/14/15), 180 So. 3d 285 ....21

*Peña v. City of Rio Grande City*,
879 F.3d 613 (5th Cir. 2018) ....21

*Peterson v. City of Fort Worth*,
588 F.3d 838 (5th Cir. 2009) ....13, 14, 17

*Piotrowski v. City of Houston*,
237 F.3d 567 (5th Cir. 2001) ....13, 14

*Pluet v. Frasier*,
355 F.3d 381 (5th Cir. 2004) ....4

*Roberts v. Bodison*,
No. 2:14-CV-00750-MGL-MGB, 2015 U.S. Dist. LEXIS 189433 (D.S.C. Nov. 20, 2015) ....5

*Robertson v. Wegmann*,
436 U.S. 584 (1978)....4

*Ruiz v. Brennan*,
851 F.3d 464 (5th Cir. 2017) ....2

*Saenz v. City of El Paso*,
637 F. App'x 828 (5th Cir. 2016) ....17

*Templeton v. CB Med., L.L.C.*,
No. 1:19-CV-01292, 2020 U.S. Dist. LEXIS 246130 (W.D. La. Sep. 30, 2020), *adopted in part by*, 2020 U.S. Dist. LEXIS 221160 (W.D. La. Nov. 24, 2020) ....20

*Thomas v. Gilley*,
No. 3:22-06174, 2023 U.S. Dist. LEXIS 181030 (W.D. La. Sep. 20, 2023), *adopted by*, 2023 U.S. Dist. LEXIS 180299 (W.D. La. Oct. 5, 2023) ....13

*Verastique v. City of Dallas, Tex.*
106 F.4th 427 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 772 (2024)....15, 16, 17

*Williams v. Bradshaw*,
459 F.3d 846 (8th Cir. 2006) ....................................................................................5

**Statutes**

28 U.S.C. § 636(b) ...........................................................................................................2

42 U.S.C. § 1981.................................................................................................................5

42 U.S.C. § 1982.................................................................................................................5

42 U.S.C. § 1983........................................................................................................ *passim*

42 U.S.C. § 1985.................................................................................................................5

42 U.S.C. § 1988...........................................................................................................4, 6

La. Civ. Code Ann. art. 2315 ............................................................................................8

La. Civ. Code Ann. art. 2315.1 ...................................................................................6, 8, 10

La. Civ. Code Ann. art. 2315.2 ...................................................................................6, 8, 10

La. Civ. Code Ann. art. 3515 ........................................................................................7, 8

La. Civ. Code Ann. art. 3542 ............................................................................................7

La. Civ. Code Ann. art. 3543 ..................................................................................... *passim*

La. Civ. Code Ann. art. 3544 ......................................................................................10, 11

La. Civ. Code Ann. art. 3546 ......................................................................................24, 25

La. Civ. Code Ann. art. 3549 ............................................................................................8

La. Rev. Stat. Ann. § 12:1705...........................................................................................20

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .....................................................................2, 3

Federal Rule of Civil Procedure 72 ....................................................................................2

Houston Public Media,
https://www.houstonpublicmedia.org/articles/news/criminaljustice/
2024/03/18/479621/harris-county-is-sending-hundreds-of-inmates-to-private-
prisons-with-seemingly-littleoversight/ .......................................................................16

Louisiana Constitution Art. I, § 5 .......................................................................................1

Louisiana Voice, https://louisianavoice.com/2021/02/07/lasalle-corrections-already-pounded-in-several-lawsuits-hit-by-one-400k-settlement-and-another-lawsuit-so-far-this-year ....................17

## INTRODUCTION

This matter arises out of the March 1, 2022, in custody death of pretrial detainee, Billie Davis.[1] Plaintiffs are: (1) Crystal Manning as next friend of L.D., Billie Davis's minor child; (2) Mariahlee Mansaw as next friend of P.M., Billie Davis's minor child; (3) Melissa Hollins as next friend of D.H., Billie Davis's minor child; and (4) Ruby Lee Davis, Billie Davis's mother.[2] Plaintiffs' Third Amended Complaint alleged three causes of action against LCC: (1) Negligence under Louisiana state law; (2) Negligence under Texas law, which is pled in the alternative; and (3) *Monell* liability under 42 U.S.C. § 1983 for the alleged violations of Billie Davis's constitutional rights to adequate medical care and to be free from the use of excessive force.[3]

LCC filed a Motion to Dismiss Plaintiff's Third Amended Complaint ("Motion to Dismiss") (Doc. 193). On June 18, 2026, the Magistrate Judge issued the R&R, recommending that the Motion to Dismiss be granted in part and denied in part.[4] The R&R recommended dismissal of Plaintiffs' claims of negligent training and hiring;[5] claims under § 1983 based on vicarious liability; and claims under Art. I, § 5 of the Louisiana Constitution.[6] The R&R recommended that LCC's motion be denied to the extent it seeks dismissal of Ruby Lee Davis;[7] Plaintiffs' remaining negligence claims;[8] and the remaining § 1983 claims.[9]

For the reasons set forth below, this Court should <u>reject</u> the Magistrate Judge's R&R and:

1) Dismiss all claims by Plaintiff, Ruby Lee Davis; and

2) Dismiss Plaintiffs' *Monell* liability claims.

[1] *See* Doc. 192, ¶ 3.9.
[2] *Id.* at ¶¶ 1.1 – 1.4.
[3] *See id.* at 13-16.
[4] Doc. 207.
[5] *Id.* at 18.
[6] *Id.* at 23.
[7] *Id.* at 13.
[8] *Id.* at 18.
[9] *Id.* at 23.

Furthermore, this Court should modify the Magistrate Judge's R&R and:

1) Dismiss Plaintiffs' failure to train claim under 42 U.S.C. § 1983; and

2) Dismiss Plaintiffs' claim for punitive damages to the extent they are sought for alleged violations of state law.

**STANDARDS OF REVIEW**

Pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72, once served with a Magistrate Judge's Report and Recommendation, a party may serve and file written objections to such proposed findings and recommendations as provided by the rules of court. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72. When written objections are filed, the United States District Court Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objections are made. *See id.* The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. *Id.*

The applicable legal standard of review under Federal Rule of Civil Procedure 12(b)(6) is the "plausibility" standard as set forth in the Supreme Court's decision in *Twombly*. *Bell Alt. Corp. v. Twombly*, 550 U.S. 544 (2007). *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Johnson v. Harris Cnty.*, 83 F.4th 941, 945 (5th Cir. 2023) (citations omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

To survive a Rule 12(b)(6) challenge, the complaint "must provide the plaintiff's grounds for entitlement for relief—including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice." *Iqbal*, 556 U.S. at 678. In evaluating the complaint's sufficiency, courts must accept all factual allegations as true, but courts do not need to accept "conclusory allegations, unwarranted factual inferences, or legal conclusions" as facts. *See Alvarado v. CITGO Petro. Corp.*, No. 25-40455, 2026 U.S. App. LEXIS 6463, at *3 (5th Cir. Mar. 4, 2026) (internal quotations omitted). Naked assertions devoid of further factual enhancement do not survive a motion to dismiss. *Johnson*, 83 F.4th at 945.

## ARGUMENT

### I. Ruby Lee Davis lacks standing.

The Court should reject the finding that Ruby Lee Davis has standing in this matter. The R&R found that dépeçage—the practice of making choice of law determinations on an issue-by-issue basis—was appropriate under the circumstances of this case. As a result, the Magistrate Judge performed two choice of law analyses: one to determine which state's law applies to the issue of "proper plaintiffs" and a second regarding which state's "negligence" law to apply to the merits of Plaintiffs' state law claims. The R&R recommended that for the issue of "proper plaintiffs," Texas law should apply and Ruby Lee Davis is a proper plaintiff.[10]

This recommendation should be rejected for two reasons: (1) it was improper to perform a choice of law analysis to determine standing for Ms. Davis's § 1983 claim as the jurisprudence is clear that the law of the forum state applies; and (2) the R&R incorrectly relied on Louisiana's general choice of law provisions to conclude Texas law applies to the issue of standing for negligence claims instead of the more specific provisions, which demand application of Louisiana law.

---

[10] Doc. 207, p. 12.

A. <u>The forum state's law applies to determine standing for § 1983 claims.</u>

"[S]tanding is not dispensed in gross." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citation omitted). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Id.* (internal quotations omitted). Whether a party has standing to assert a wrongful death or survival claim under the civil right statutes is guided by 42 U.S.C. § 1988. *Abraugh v. Altimus*, 26 F.4th 298, 302 (5th Cir. 2022) (citing *Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004)). Section 1988 requires application of the Louisiana wrongful death and survival statutes to determine standing for the § 1983 claims in this matter.

According to the United States Supreme Court, § 1988 requires courts to perform a three-step analysis to determine the rule of decision required to adjudicate § 1983 claims. *Burnett v. Grattan*, 468 U.S. 42, 47-48 (1984). Primarily, courts are to look to the laws of the United States so far as such laws are suitable to carry the civil and criminal civil rights statutes into effect. *Id.* However, "one specific area not covered by federal law is that relating to the survival of civil rights actions under § 1983." *Robertson v. Wegmann*, 436 U.S. 584, 589 (1978). In such cases, where "no suitable federal rule exists, courts undertake the second step by considering application of state common law, as modified and changed by the constitution and statutes of the ***forum State***." *Burnett*, 468 U.S. at 48 (internal quotations omitted) (emphasis added). The third step, which is not implicated here, requires the Court to consider the predominance of federal interest and "apply state law only if it is not inconsistent with the Constitution and laws of the United States." *Id.*

In accordance with the Supreme Court's decisions, courts across the nation routinely apply the ***forum state's*** laws to determine standing for wrongful death and survival claims brought pursuant to § 1983. *See e.g., Miller v. C.M.S. Corr. Med. Serv.*, No. 08-3014-NLH-AMD, 2010 U.S. Dist. LEXIS 24156, at *7-8 (D.N.J. Mar. 16, 2010) ("Since § 1983 does not address the issue of standing for survivor actions, the Court must rely on the law of the ***forum state***."); *Roberts v.*

*Bodison*, No. 2:14-CV-00750-MGL-MGB, 2015 U.S. Dist. LEXIS 189433, at *12 (D.S.C. Nov. 20, 2015) (citing *Williams v. Bradshaw*, 459 F.3d 846, 848-49 (8th Cir. 2006)) (noting such results are "consistent with persuasive precedent holding that lack of standing to bring a wrongful death claim in the ***forum state*** is a bar to bringing a § 1983 claim as well"); *Cabrera v. S. Health Partners, Inc.*, No. 9:23-CV-80-MJT, 2024 U.S. Dist. LEXIS 147586, at *17 (E.D. Tex. July 3, 2024) ("Courts in the Fifth Circuit incorporate law of the ***forum state*** to the questions of who has standing to bring the lawsuit and capacity to assert the state and federal claims in an action based on the alleged injuries to a decedent.") (cleaned up); *De Peguero v. Mun. of San Juan*, No. 14-1812 (JAG), 2017 U.S. Dist. LEXIS 228620, at *9 (D.P.R. Mar. 31, 2017) (A plaintiff "has standing to bring a Section 1983 action on behalf of a decedent, if the law of the ***forum state*** permits."); *Melancon v. La.*, No. 11-1794, 2013 U.S. Dist. LEXIS 42955, at *4 (W.D. La. Mar. 26, 2013) ("Federal jurisprudence also provides that a party must have standing under the ***forum state's*** wrongful death or survival statutes in order to bring a claim under 42 U.S.C. § 1983.").

The forum state is Louisiana. It does not matter that Plaintiffs originally filed suit in Texas. The Southern District of Texas Court dismissed the Texas action and transferred it to the Western District of Louisiana because venue was improper in Texas.[11] After transfer to Louisiana, the laws of Louisiana, as the forum state, apply in § 1983 actions when no suitable federal law exists. *See Davis v. La. State Univ.*, 876 F.2d 412, 413 (5th Cir. 1989). In *Davis v. LSU*, the plaintiff originally filed suit in the Eastern District of Texas bringing claims under 42 U.S.C. §§ 1981, 1982, 1983, and 1985. *Id.* On defendants' motion, the matter was transferred to the Middle District of Louisiana. *Id.* Thereafter, the defendants filed for summary judgment arguing that the plaintiff's action was prescribed under Louisiana law. *Id.* The plaintiff opposed summary judgment, arguing

[11] Doc. 163.

for application of Texas's statute of limitations, which provided for a longer period to file suit. *Id.* Pursuant to § 1988, the Fifth Circuit affirmed the district court's application of Louisiana law and the dismissal of plaintiff's lawsuit. *Id.* The Fifth Circuit held that under § 1988, "[w]hen venue is improper in the transferor court, the transferee court should apply the law of the state in which it sits." *Id.* The forum state is determined by the district in which the transferred case is pending. *See id.* Here, the forum state is Louisiana.

Accordingly, the R&R should be rejected insofar as it applies Texas law to Ms. Davis's § 1983 claims. Under binding Supreme Court precedent, the Court should not engage in a choice of law analysis for this issue. The Court should simply apply the wrongful death and survival statutes of Louisiana, the forum state. Under Louisiana law, as applicable to these Plaintiffs, the right to pursue a survival or wrongful death action is only available to:

> (1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
>
> (2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving.

*See* La. Civ. Code Ann. arts. 2315.1 & 2315.2. Although a survival action may sometimes be brought by the deceased's succession representative, that is only true in the absence of any higher-ranking class of beneficiary. La. Civ. Code Ann. art. 2315.1(B).

Plaintiffs allege that Billie Davis was the father of three minor children—the other three Plaintiffs in this matter.[12] Because suit has been filed on behalf of the decedent's children, Ruby Lee Davis "is disabled from suing as a matter of Louisiana law as the surviving ... mother of the deceased." *Abraugh*, 26 F. 4th at 302–03 (internal quotations omitted). Ms. Davis lacks standing to bring § 1983 claims. Those claims should be dismissed with prejudice.

---

[12] *See* Doc. 192, ¶¶ 1.1 – 1.3.

B. Louisiana's choice of law provisions require application of Louisiana law in determining standing to bring state law negligence claims.

The Court should likewise reject the R&R's recommendation that Texas law should determine standing to bring state law negligence claims in this matter. The parties agree that Louisiana's choice of law rules apply to this issue.[13] However, the Magistrate Judge should not have applied the general choice of law provisions in Louisiana Civil Code Articles 3515 & 3542.[14] The R&R recognized that the more specific choice of law rules contained in Articles 3543 through 3546 will prevail over the more general rules when those articles are applicable.[15] This is correct, as "[b]eing more specific, the sub-rules in La. C.C. arts. 3543 and 3544, when applicable, prevail over the general rules in La. C.C. arts. 3515 and 3542." *Lonzo v. Lonzo*, 2017-0549 (La. App. 4 Cir 11/15/17), 231 So. 3d 957, 967. However, the R&R found that none of those more specific articles pertained to the issue of proper plaintiffs.[16] Respectively, LCC contends this was incorrect. The Court should reject this determination because the more specific code articles control and those articles require application of Louisiana's wrongful death and survival statues to the issue of standing for negligence claims.

As a preliminary matter, the R&R should be rejected insofar as it recommends the application of two different states' laws to the issues of which state's substantive negligence law to apply and which state's standing law to apply. Applying Louisiana Civil Code Article 3543, the R&R recommends that the Court apply Louisiana law to the "merits of the negligence claims."[17] Based on the circumstances of this case, that is the correct recommendation and should be adopted. The R&R further recommends that Texas law should apply to standing for the negligence claims.[18]

---

[13] *See* Doc. 207, p. 8.
[14] *Id.* at 10.
[15] *Id.*
[16] *Id.*
[17] *Id.* at 14.
[18] *Id.* at 12.

The R&R justifies this issue-by-issue approach with citation to comment (d) of Article 3515, which states that this practice, known as dépeçage, is not prohibited. However, comment (d) also states that "dépeçage should not be pursued for its own sake. The unnecessary splitting of the case should be avoided, especially when it results in distorting the policies of the involved states." La. Civ. Code art. 3515 cmt. (d). Because the R&R recommends that La. Civil Code Article 2315 should apply as the substantive negligence law in this matter, Articles 2315.1 & 2315.2, Louisiana's wrongful death and survival statutes, should also apply. *Cf.* La. Civ. Code art. 3549 (requiring application of this state's prescription and peremption law when the substantive law of this state is applicable to the merits of an action).

Regardless of whether the choice of "substantive law" and "standing law" are determined separately, proper application of Louisiana's choice of law rules results in Louisiana law applying to both issues. As argued in LCC's motion to dismiss, Article 3543 should apply as it is the more specific choice of law article. Article 3543 provides that:

> Issues pertaining to standards of conduct and safety are governed by the law of the state in which the conduct that caused the injury occurred, if the injury occurred in that state or in another state whose law did not provide for a higher standard of conduct.
>
> In all other cases, those issues are governed by the law of the state in which the injury occurred, provided that the person whose conduct caused the injury should have foreseen its occurrence in that state.
>
> The preceding paragraph does not apply to cases in which the conduct that caused the injury occurred in this state and was caused by a person who was domiciled in, or had another significant connection with, this state. These cases are governed by the law of this state.

La. Civ. Code Ann. art. 3543. As the R&R correctly found, "the alleged wrongful conduct and injury occurred in one state (Louisiana)."[19] *See also McGee v. Arkel Int'l, LLC*, 671 F.3d 539, 543 (5th Cir. 2012) (finding the "injury" occurred at the place of death for purposes of an analysis under Article 3543 in the context of a wrongful death and survival action). Accordingly, Article 3543 results in the application of Louisiana law.

Decisions from Louisiana federal courts comport with this conclusion. In *McGee v. Arkel Int'l, LLC*, the Fifth Circuit applied Article 3543 to determine which law applied to the merits of the plaintiffs' wrongful death and survival claims. *McGee*, 671 F.3d at 544. Pursuant to Article 3543, Iraqi law governed plaintiffs' claims because Iraq was the place of the alleged tortious conduct and resulting injury. *Id.* at 543. The Fifth Circuit did not address the issue of proper parties but instead designated that issue for further consideration by the district court. *Id.* at 550. On remand, the Eastern District of Louisiana, applying Iraqi law, held that the parents of the decedent were not entitled to bring a survival claim on behalf of their deceased son because Iraqi law did not provide for one. *McGee v. Arkel Int'l, LLC*, No. 08-4704, 2012 U.S. Dist. LEXIS 172475, at *22–23 (E.D. La. Dec. 5, 2012). Notably, the Eastern District did not perform a separate choice of law analysis to determine which law should apply to the availability of survival claims but instead relied on the Fifth Circuit's determination that application of Iraqi law was appropriate in the wrongful death and survival action. *See id.* at 4.

A similar result was reached under Article 3543 in *Moore v. Wayne Smith Trucking, Inc.* There, the plaintiff brought wrongful death and survival claims on her own behalf and on behalf of her minor child for the death of the minor child's father in a motor vehicle accident. *Moore v. Wayne Smith Trucking, Inc.*, No. 14-1919, 2015 U.S. Dist. LEXIS 14004, at *2–3 (E.D. La. Feb.

[19] Doc. 207, p. 12.

4, 2015). Defendants moved to dismiss the plaintiff's personal capacity claims on the basis that she was not married to the decedent at the time of his death. *Id.* at 3. The Eastern District held that Article 3543 applied because the accident at issue occurred in Louisiana. *Id.* at 7. As a result, the court applied Louisiana's wrongful death and survival statutes, Articles 2315.1 & 2315.2, to determine that the plaintiff's personal capacity claims should be dismissed. *Id.* at 7–8.

Here, the Court should reject the R&R and, like the *McGee* and *Moore* courts, apply Article 3543 to determine which state's law governs standing to bring state law wrongful death or survival claims. Article 3543 requires application of Louisiana law because the alleged tortious conduct and alleged resulting injury occurred in Louisiana. *See* La. Civ. Code Ann. art.3543.

In the alternative, and to the extent the Court determines the issue of standing to bring a wrongful death or survival claim in this action is one of "loss distribution and financial protection," the Court should apply Article 3544, which also results in the application of Louisiana law. Article 3544 provides:

> Issues pertaining to loss distribution and financial protection are governed, as between a person injured by an offense or quasi-offense and the person who caused the injury, by the law designated in the following order:
>
> (1) If, at the time of the injury, the injured person and the person who caused the injury were domiciled in the same state, by the law of that state. Persons domiciled in states whose law on the particular issue is substantially identical shall be treated as if domiciled in the same state.
>
> (2) **If, at the time of the injury, the injured person and the person who caused the injury were domiciled in different states: (a) when both the injury and the conduct that caused it occurred in one of those states, by the law of that state**; and (b) when the injury and the conduct that caused it occurred in different states, by the law of the state in which the injury occurred, provided that (i) the injured person was domiciled in that state, (ii) the person who caused the injury should have foreseen its occurrence in that state, and (iii) the law of that state provided for a higher standard of financial

> protection for the injured person than did the law of the state in which the injurious conduct occurred.

La. Civ. Code Ann. art. 3544 (emphasis added). Again, as the R&R correctly found, "the alleged wrongful conduct and injury occurred in one state (Louisiana)."[20] Therefore, even if this Court determines Article 3544 applies instead of Article 3543, Louisiana law still applies.

In fact, there are grounds to argue that Article 3544 may be the more appropriate article to apply here. Comment (b) of Article 3544 provides that the "scope of this Article is confined to obligations between the tortfeasor and the victim and their respective universal or particular successors," which clearly contemplates wrongful death and survival actions. *See* La. Civ. Code Ann. art. 3544, cmt. (b). This is, of course, the very relationship between LCC (alleged tortfeasor) and Ms. Davis (alleged victim's successor) that is present in this case. Furthermore, Comment (b) also defines the identities of the "injured persons" in both a "wrongful death" and "survival action." *Id.* The inclusion of these definitions in this comment speaks to Article 3544's application in choice of law analyses involving wrongful death and survival actions. Moreover, at least one court has applied Article 3544 to the determination of who is the proper plaintiff, albeit in a lawsuit to recover for personal injury. *See Lonzo*, 231 So. 3d at 967 (Article 3544 required application of Louisiana law to determine if a spouse is a proper plaintiff in lawsuit against her husband).

Ultimately, regardless of whether the Court deems it more appropriate to apply Article 3543 or 3544, Louisiana law applies. Both articles, being the more specific choice of law articles, should be applied instead of the general choice of law articles, Articles 3515 & 3542. *See McGee*, 671 F.3d at 543. The case cited in the R&R as a basis for applying the general articles, *Bell v. Foster Wheeler Energy Corp.*, is distinguishable. It pertained to the availability of survival claims in general, not who is a proper plaintiff to bring one. *Bell v. Foster Wheeler Energy Corp.*, No. 15-

---

[20] Doc. 207, p. 12.

6394, 2017 U.S. Dist. LEXIS 31118, at *5 (E.D. La. Mar. 6, 2017). The weight of the authority outlined above and a plain reading of the applicable code articles clearly demands application of Louisiana's wrongful death and survival statutes to the issue of standing for Plaintiff's negligence claims. As a result, Ruby Lee Davis's state law negligence claims should also be dismissed with prejudice.

## II. Plaintiffs failed to plead a plausible claim for *Monell* liability.

Although not clearly stated in Plaintiffs' Complaint, the R&R correctly concluded that Plaintiffs are bringing two separate *Monell* claims against LCC—one for alleged inadequate medical care and one for alleged excessive force.[21] LCC moved to dismiss both claims under 42 U.S.C. § 1983 on the grounds that Plaintiffs failed to sufficiently plead the requisite elements for *Monell* liability. Specifically, Plaintiffs failed to plead plausible factual allegations to support findings that: (1) an unconstitutional custom or policy existed at LCC; (2) a policymaker promulgated or ratified the alleged unconstitutional custom or policy; (3) the alleged unconstitutional custom or policy was maintained with deliberate indifference; or (4) the alleged unconstitutional custom or policy was the "moving force" behind the alleged constitutional violations.[22] Nevertheless, the R&R found that Plaintiffs stated a plausible § 1983 claim against LCC for *Monell* liability.[23]

The Court should reject that recommendation and dismiss Plaintiffs' § 1983 claims because Plaintiffs failed to state a plausible *Monell* claim. To establish *Monell* liability under § 1983, a plaintiff must show that (1) an official policy or custom (2) promulgated by the policymaker (3)

[21] *See* Doc. 207, p. 18.
[22] Doc. 193-1, pp. 6-13. LCC also moved to dismiss any purported § 1983 claim for failure to train as well as any § 1983 claim brought pursuant to a theory of vicarious liability. The R&R correctly recommended dismissal of Plaintiffs' § 1983 claims that are based on vicarious liability, but the R&R did not issue a recommendation regarding Plaintiffs' § 1983 failure to train claims. LCC addresses Plaintiffs' § 1983 failure to train claim in the following section. *See* Section III, *infra*.
[23] *See* Doc. 207, p. 23.

was the moving force behind the violation of a constitutional right. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). A *Monell* defendant is almost never liable for an isolated unconstitutional act on the part of its employees; it is liable only for acts directly attributable to it through some official action or imprimatur. *Thomas v. Gilley*, No. 3:22-06174, 2023 U.S. Dist. LEXIS 181030, at *28 (W.D. La. Sep. 20, 2023), *adopted by*, 2023 U.S. Dist. LEXIS 180299 (W.D. La. Oct. 5, 2023) (quotations omitted).[24]

A. Plaintiffs failed to adequately plead a custom under *Monell*.

The Court should reject the R&R as it relates to Plaintiffs' *Monell* claims because Plaintiffs did not adequately allege a custom of unconstitutional conduct. In determining that Plaintiffs had sufficiently pled the existence of an unconstitutional custom, the R&R contained a finding that Plaintiffs had adequately alleged a practice that fairly represents the policies of LCC regarding inadequate medical care and excessive force.[25] LCC maintains its position that under binding Fifth Circuit precedent, Plaintiffs failed to sufficiently plead the existence of a custom, especially considering Plaintiffs only alleged that one prior incident occurred at the subject facility.

In § 1983 actions alleging *Monell* liability, a plaintiff can establish the requisite policy element by showing one of the following:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the

[24] "Mistakes in analyzing section 1983 municipal liability cases frequently begin with a failure to separate the three attribution principles and to consider each in light of relevant case law." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). "Culpability includes both the involvement of a municipal policymaker and affirmative municipal action." *Id*. n.17.

[25] Doc. 207, p. 19.

> governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Armstrong v. Ashley*, 60 F.4th 262, 276 (5th Cir. 2023). "[E]ach and any policy which allegedly caused constitutional violations must be specifically identified." *Piotrowski*, 237 F.3d at 579. Plaintiffs do not allege the existence of an official written policy statement, ordinance, regulation, or decision. Instead, Plaintiffs allege that Mr. Davis's constitutional rights were violated pursuant to LCC's "persistent, widespread practices," i.e., a custom of providing inadequate medical care and a custom of using excessive force.[26] But Plaintiffs failed to plead enough similar prior examples to establish either of the alleged unconstitutional customs.

To establish an unconstitutional custom, a plaintiff must plead the existence of "similar incidents that are sufficiently numerous and have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees. *Martinez v. Nueces Cnty.*, 71 F.4th 385, 389 (5th Cir. 2023) (internal quotations omitted). Plaintiffs' alleged examples are not sufficiently similar or sufficiently numerous.

1. *Plaintiffs' examples are not sufficiently similar.*

"A pattern requires similarity and specificity; prior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question." *Peterson*, 588 F.3d at 851 (internal quotations omitted). Plaintiffs allege six examples of prior incidents to support their allegation of a *Monell* custom.[27] Those examples are not alleged with enough specificity to show similarity to the events alleged in Plaintiffs' Complaint.

---

[26] Doc 192, p. 9.
[27] *Id.* at 11-13.

Plaintiffs allege that LCC had a custom of refusing to provide medical care for inmates' serious medical needs.[28] Specifically, Plaintiffs allege that, pursuant to this purported custom, LCC medical staff provided Davis with no medical care for a plainly visible serious head injury and put him in a restraint chair in an isolation cell without constant monitoring.[29] However, five of the examples that Plaintiffs list of LCC's alleged prior incidents of providing inadequate medical care do not bear any similarity with the events alleged in Plaintiffs' Complaint. For four of their six examples, Plaintiffs conclusively and globally allege that various "LaSalle defendants" were accused of failing to provide necessary medical care or were deliberately indifferent to inmates' serious medical needs, without providing any specific factual background in support.

Further, while Plaintiffs do provide some factual background for one of the two remaining examples, it is only to state that the inmate at the Madison Parish Correctional Center died following an asthma attack. No other details allow the Court to determine that this event is in any way similar to the subject incident.[30] These barebones allegations lack sufficient specificity and similarity with the events alleged in the Complaint to state a plausible claim. *Verastique v. City of Dallas, Tex.*, 106 F.4th 427, 433 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 772 (2024) (affirming dismissal of *Monell* claim because incidents described in the complaint did not point to the specific violation in question). So, too, here.[31]

The examples alleged by Plaintiffs likewise do not support Plaintiffs' allegation that LCC had an unconstitutional custom of using excessive force. Plaintiffs allege that LCC had a custom

---

[28] Doc. 192, p. 9.
[29] *Id.* at 10.
[30] *Id.* at 11-13.
[31] In this regard, in an opinion reviewing similarly vague incidents attempting to show a custom, the Fifth Circuit noted: "Where did those incidents take place? Did all eight involve both physical and verbal abuse? How did the abuse occur? What even are the alleged constitutional violations? How was each complaint resolved? Plaintiffs do not say, and we have not a clue." *Verastique*, 106 F.4th at 432.

of using excessive force on restrained, helpless, and injured inmates.[32] Plaintiffs only alleged that three of their six examples involved allegations of the use of excessive force against inmates.[33] Moreover, only one of the three examples is alleged to have involved the use of excessive force against an inmate in restraints.[34] The purported examples of prior incidents of excessive force are simply not similar enough or alleged with sufficient specificity to warrant finding the existence of an unconstitutional custom at the LCC facility as alleged in Plaintiffs' Complaint.

Ultimately, Plaintiffs' "examples" of other alleged incidents involve different officials and different circumstances and took place in different locations at other facilities, and therefore, fail to sufficiently support Plaintiffs' allegations of an unconstitutional custom at the LCC in Olla. *See Damond v. City of Rayville*, 127 F.4th 935, 939 (5th Cir. 2025). Plaintiffs' vague and conclusory allegations regarding other purported prior incidents do not raise a right to relief above the speculative level. *Verastique*, 106 F.4th at 432 (prior "incidents [that are] vague and barren of factual support … are patently incapable of showing the existence of any pattern of conduct").

Finally, Plaintiffs' citation to a pair of news articles in their Complaint does not bolster their custom allegations. It is unclear if the first news article published by the Houston Public Media is meant to support Plaintiffs' allegation of a custom of excessive force or inadequate medical care as Plaintiffs only cite the article's claim that 19 people died in custody of "LaSalle Center" in 2021, and 27 people died at the jail in 2022.[35] That article cannot support either type of custom alleged. It states that the reported deaths actually occurred at the Harris County Jail in Texas, not at the LCC facility in Olla, Louisiana.[36] The other article cited by Plaintiffs lists one

---

[32] Doc. 192, p. 9.
[33] *Id.* at 11-12.
[34] *Id.* at 12.
[35] *Id.*
[36] Lucio Vasquez, Harris County is 'surrendering control' by sending inmates out of Texas to private prisons with questionable oversight, Houston Public Media, https://www.houstonpublicmedia.org/articles/news/criminaljustice/

example that Plaintiffs already alleged as well as one that they did not previously allege involving a slip and fall incident, and the article does not contain any reports of excessive force.[37] The six incidents and two news articles cited by Plaintiffs are not sufficiently similar to show a *Monell* custom. In sum, Plaintiffs' prior references lack "similarity and specificity" and do not "point to the specific violation in question." *Verastique*, 106 F.4th at 433 (quoting *Edwards v. City of Balch Springs*, 70 F.4th 302, 313 (5th Cir. 2023) (cleaned up)).

2. *Plaintiffs' examples are not sufficiently numerous.*

Adequately pleading a pattern of unconstitutional conduct also requires alleging sufficiently numerous prior incidents, as opposed to isolated instances. *Peterson*, 588 F.3d at 851. Plaintiffs do not allege the date on which each of their purported examples occurred, but reviewing the civil action docket numbers makes it apparent that Plaintiffs' six examples occurred between 2016 and 2022.[38] An allegation of around one incident per year is insufficient to show a pattern constituting a custom. *See, e.g., Saenz v. City of El Paso*, 637 F. App'x 828, 832 (5th Cir. 2016) (allegation of twenty-one previous incidents over nineteen years, without further context, is insufficient to represent a custom); *Damond*, 127 F.4th at 939 (allegation of six alleged incidents over several months is insufficient to allege a custom or policy of tolerating widespread, repeated constitutional violations); *Verastique*, 106 F.4th at 433–34 (allegation of nineteen incidents over twenty-three years not sufficiently numerous to find a department-wide pattern). This is especially true in light of Plaintiffs' allegation that "the family of LaSalle facilities," whom Plaintiffs attribute the two unconstitutional customs, operate "18 correctional facilities in Louisiana, Texas, and

2024/03/18/479621/harris-county-is-sending-hundreds-of-inmates-to-private-prisons-with-seemingly-littleoversight/.

[37] *See* Louisiana Voice, https://louisianavoice.com/2021/02/07/lasalle-corrections-already-pounded-in-several-lawsuits-hit-by-one-400k-settlement-and-another-lawsuit-so-far-this-year

[38] *See* Doc. 192, pp. 11-12.

Georgia with a total inmate capacity of over 13,000."[39] *See Martinez*, 71 F.4th at 391 n.9 (citation omitted) (noting "the importance of proportionality and the number of incidents necessary to establish a pattern against a larger organization").

Plaintiffs' six examples of alleged incidents of inadequate medical care, even if somehow attributable to LCC, are not sufficiently numerous to support a plausible custom. Plaintiffs' three examples of alleged prior instances of excessive force are not sufficiently numerous either. Ultimately, Plaintiffs failed to sufficiently plead an unconstitutional custom in support of their *Monell* claims, which should be dismissed.

B. <u>Plaintiffs failed to adequately plead the purported custom was the "moving force" of any alleged constitutional violation.</u>

Plaintiffs' allegations, accepted as true, do not plausibly establish that an alleged unconstitutional custom was the "moving force" of any purported constitutional violation at the Olla facility. Under Fifth Circuit precedent, plaintiffs that fail to allege the occurrence of other incidents at the subject facility have failed to plausibly plead a *Monell* claim. Plaintiffs only allege that one of the examples cited in their Complaint actually occurred at the Olla facility.

In *Martinez v. Nueces County*, the Fifth Circuit clearly stated that a plaintiff's failure to "allege a single instance of medical negligence (aside from his own) that occurred" at the subject facility leaves the Court no reason to conclude that a *Monell* defendant, "at an organization-wide level, had a policy of deliberate indifference that was the moving force of [plaintiff's] alleged constitutional violation at the [subject facility]." *Martinez*, 71 F.4th at 392–93. Although the plaintiff in *Martinez* failed to allege a single other incident at the subject facility, it follows that only alleging one example to have occurred at the subject facility is likewise insufficient. "Where

[39] Doc. 192, p. 11.

a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability." *Martinez*, 71 F.4th at 390 n.6 (emphasis in original).

C. Plaintiffs failed to plead a claim under single business enterprise theory.

Despite only alleging one prior incident at the subject facility, Plaintiffs argue that they have successfully pled a custom for purposes of *Monell* liability because each "separate limited liability company … should all be considered as one when it comes to custom, practice, or policies."[40] However, Plaintiffs failed to plead any factual allegations that would allow the Court to disregard the independent identities of the separate limited liability companies that Plaintiffs claim should "be considered as one."

The R&R appears to endorse this single business enterprise allegation. For example, the R&R found that "[c]ase law involving LaSalle's various facilities has made clear to them what constitutes excessive force and unconstitutional denial of medical care and what their policies and customs should be and that incidents across their facilities may be considered, particularly at this stage of litigation."[41] Moreover, the R&R incorrectly states that "the same defendant" was found to be deliberately indifferent to an inmate's medical needs in the case of *Moore v. LaSalle Mgmt. Co*.[42] But, LCC is the only defendant here. LCC was not a defendant in *Moore*, and the events in *Moore* did not occur at the LaSalle Correctional Center in Olla, Louisiana. LCC does not operate or manage any other facilities apart from the Olla facility. If Plaintiffs are seeking to advance a claim that LCC should somehow be treated as a single business enterprise with the other LaSalle-branded entities, that claim is not supported with sufficient plausible facts; there are only conclusory allegations.

[40] Doc. 192, p. 11.
[41] Doc. 207 p. 16.
[42] *Id.* at 21.

Louisiana law is determinative of whether entities constitute a "single business enterprise." *Templeton v. CB Med., L.L.C.*, No. 1:19-CV-01292, 2020 U.S. Dist. LEXIS 246130, at *22 (W.D. La. Sep. 30, 2020) (citing *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579 (5th Cir. 2010)), *adopted in part by*, 2020 U.S. Dist. LEXIS 221160 (W.D. La. Nov. 24, 2020). In 2024, the Louisiana legislature enacted Louisiana Revised Statute § 12:1705, which provides that:

> The separate juridical personality of a business organization shall not be disregarded as between one business organization and another except on grounds that would justify disregarding the separate personality of a business organization as between the business organization and a natural person.

La. Rev. Stat. Ann. § 12:1705.

The term "business organization" used in § 12:1705 includes limited liability companies. *Id.* After the Louisiana legislature enacted § 12:1705, a claim alleging the single business enterprise of multiple limited liability companies is required to satisfy the standard for corporate veil piercing, which is only appropriate where:

> (1) shareholders, acting through the corporation, commit fraud or deceit on a third party, such that justice demands the corporate veil be pieced to allow the third party to recover from the shareholders, and (2) the shareholders disregard corporate formalities to such an extent that the shareholders and corporation are indistinguishable.

*Direct Steel, LLC v. Tri-C Civil Constr., LLC*, No. 2:26-cv-00074-ASJ-JVM, 2026 U.S. Dist. LEXIS 143184, at *6 (E.D. La. June 29, 2026).

Plaintiffs do not allege that LCC engaged in fraud or deceit. Nor do they allege that LCC disregarded corporate formalities to the extent that the group of limited liability companies are indistinguishable. Without such allegations, LCC cannot be held jointly liable with the other LaSalle-branded entities. Therefore, the alleged acts of the other limited liability companies cannot be utilized as a basis for LCC's liability in this matter. The public policy of Louisiana "supports limited liability as a general rule within L.L.C. business entities … and a court may not substitute

its social and economic beliefs for the judgment of the Louisiana Legislature." *See Nunez v. Pinnacle Homes, L.L.C.*, 180 So. 3d 285, 292 (La. 2015).

D. Plaintiffs failed to adequately plead that a policymaker ratified the alleged unconstitutional conduct.

As an element of their *Monell* claims, Plaintiffs are required "to plead facts—facts which establish that the challenged policy was promulgated or ratified by [a] policymaker." *See Groden v. City of Dallas, Tex.*, 826 F.3d 280, 285 (5th Cir. 2016). The R&R recommends finding that Plaintiffs satisfied this requirement because the subject incident was allegedly witnessed by the Assistant Warden and a major.[43] But neither the Assistant Warden nor the major are alleged to be a policymaker of LCC, the actual Warden is the alleged policymaker.[44] Plaintiffs do not allege that the Warden witnessed the events described in Plaintiffs' Complaint. Plaintiffs' allegations are merely *respondeat superior* in disguise.

The R&R states that the policymaker does not need to be a defendant in the case to support a *Monell* claim. But this was never argued. Further, the R&R does not explain how the Warden at the LCC could have promulgated or ratified purported customs based on alleged incidents that occurred at different facilities. Zero plausible facts show that LCC's Warden had any involvement at the other facilities let alone that he was a policymaker anywhere other than the Olla facility. The R&R simply does not explain how the Warden at the Olla facility could have maintained a policy or custom with deliberate indifference at other facilities for which he is not responsible. Plaintiffs failed to sufficiently plead this element. *See Peña v. City of Rio Grande City*, 879 F.3d 613, 622–23 (5th Cir. 2018) ("complaint invite[d] no more than speculation that any particular policymaker

[43] Doc. 207, p. 20.
[44] Doc. 192, p. 9.

… knew about the alleged custom”). This Court should dismiss Plaintiffs’ *Monell* liability claims under § 1983.

**III. Plaintiffs’ failure to train claim under § 1983 should be dismissed.**

The R&R recommended dismissal of Plaintiffs’ state law negligent training and hiring claims.[45] However, the R&R did not address whether Plaintiffs’ failure to train claim under 42 U.S.C. § 1983 should also be dismissed. Plaintiffs’ Complaint did not explicitly allege a § 1983 failure to train claim as a separate cause of action.[46] Nevertheless, because Plaintiffs alleged that LCC failed to train its officers in the use of force and alleged a negligent hiring and training claim under state law, LCC also moved to dismiss any purported failure to train claim arising under § 1983.[47] Plaintiffs opposed this ground in their opposition to LCC’s motion.[48] Because the R&R recommended dismissal of Plaintiffs’ negligent training and hiring claims, the failure to train claim under § 1983 should also be dismissed.

To show a failure to train claim under § 1983, a plaintiff must show (1) that the entity failed to train its officials; (2) that this training failure directly caused the alleged injuries; and (3) that the entity displayed deliberate indifference in adopting those inadequate training policies. *Anderson v. Marshall Cnty., Miss.*, 637 F. App’x 127, 134 (5th Cir. 2016). “Even within the difficult world of *Monell* liability, failure-to-train claims are especially difficult to establish.” *Id.* A municipality’s failure to train or discipline its employees can rise to the level of a constitutional violation only where the plaintiff can demonstrate deliberate indifference. *Hankins v. Wheeler*, No. 21-1129, 2026 U.S. Dist. LEXIS 125737, at *7 (E.D. La. June 8, 2026) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

---

[45] Doc. 207, p. 18.
[46] Doc. 192, pp. 13-16.
[47] *See* Doc. 193-1, pp. 13-14.
[48] Doc. 200, pp. 23-24.

Plaintiffs failed to plead sufficient factual allegations to support a plausible § 1983 claim for failure to train. Again, Plaintiffs did not expressly plead a failure to train claim in their Complaint. In their response memorandum, Plaintiffs rely primarily on alleged deficiencies in the facility staff's conduct as well as speculation that "adequate training" could have prevented the alleged injuries, but that alone is insufficient to state a plausible claim for failure to train. *See id.* *8. Imposing liability on that basis would, contrary to *Monell*, impose *respondeat superior* liability upon municipalities. *Id.*

Because Plaintiffs failed to plead a plausible claim for negligent hiring and training, their failure to train claim under § 1983 also fails. The standard to allege a state law negligent training claim is less stringent than the standard required to plead the same claim under *Monell*. *See e.g.*, *A.F. v. St. Tammany Par. Sch. Bd*., No. 23-7426, 2025 LX 85520, at *44 (E.D. La. Apr. 25, 2025) (recognizing that a failure to train claim under *Monell* liability requires a plaintiff to show "deliberate indifference" while state law negligent training claims require "no such formulaic and particularized showing") (citing *Gomez v. Galman*, 18 F.4th 769, 781 (5th Cir. 2021)). "Indeed, '[a] showing of simple or even heightened negligence will not suffice.'" *Gomez*, 18 F.4th at 778 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 407 (1997)).

The R&R contains findings that Plaintiffs failed to plead sufficient facts to identify (1) any specific negligent hiring or training policies, (2) any specific deficiencies in training programs, or (3) any causal link between negligent training or hiring policies and Plaintiffs' alleged injuries.[49] Accordingly, Plaintiffs' failure to train claim under § 1983, like their negligent training and hiring claim, should also be dismissed.

---

[49] Doc. 207, p. 17.

## IV. Plaintiffs cannot recover punitive damages for alleged violations of state law.

Plaintiffs' Complaint requests punitive damages.[50] LCC moved to dismiss Plaintiffs' claim for punitive damages to the extent those damages are sought for violations of state law. Louisiana law does not provide for the recovery of punitive damages under the circumstances alleged. Plaintiffs responded that Texas law should apply to Plaintiffs' negligence claim, and therefore, punitive damages are available for alleged violations of state law.[51] As discussed above, the R&R engaged in dépeçage and split the choice of law analysis for determining which state's law to apply to the issues of a proper plaintiff and negligence.[52] However, the R&R did not analyze or determine which state's law to apply to the issue of whether punitive damages are available for alleged violations of state law.

Louisiana's choice of law rules apply here, also.[53] Those rules are clear. Punitive damages are not available for state law violations under the facts alleged here. Louisiana has a specific choice of law code article pertaining to the availability of punitive damages. *See* La. Civ. Code Ann. art. 3546. Punitive damages may *not* be awarded by a court of this state unless authorized:

> (1) By the law of the state where the injurious conduct occurred and by either the law of the state where the resulting injury occurred or the law of the place where the person whose conduct caused the injury was domiciled; or
>
> (2) By the law of the state in which the injury occurred and by the law of the state where the person whose conduct caused the injury was domiciled.

La. Civ. Code Ann. art. 3546.

Neither subparagraph (1) or (2) require application of any other states' law on this issue. As the R&R found, "the alleged wrongful conduct and injury occurred in one state (Louisiana)."[54]

---

[50] Doc. 192, p. 16.
[51] Doc. 200, p. 27.
[52] Doc. 207, p. 8.
[53] *See id.*
[54] *Id.* at 12.

Louisiana law, therefore, applies to the issue of whether punitive damages are available for alleged violations of state law. Louisiana only allows recovery of punitive damages for the following claims, none of which apply here: "child pornography (La. C.C. art. 2315.3), drunk driving (La. C.C. art. 2315.4), sexual abuse of a child (La. C.C. art. 2315.7), domestic violence (La. C.C. art. 2315.8), interception, disclosure or use of certain wire/oral communications (La. R.S. 15:1312), and instances in which punitive damages would be available pursuant to Louisiana's conflict of laws (La. C.C. art. 3546)." *Lazard v. Estrada*, No. 6:21-CV-04042, 2022 U.S. Dist. LEXIS 56287, at *4 n.2 (W.D. La. Mar. 4, 2022), *adopted by*, No. 6:21-CV-04042, 2022 U.S. Dist. LEXIS 54917, at *1 (W.D. La. Mar. 25, 2022). This Court should modify the Magistrate Judge's R&R to dismiss, with prejudice, Plaintiffs' claims for punitive damages to the extent those damages are sought for alleged violations of state law.

## CONCLUSION

For the foregoing reasons, this Court should overrule the Magistrate Judge's Report and Recommendation (Doc. 207) and dismiss, with prejudice: (1) all claims by Plaintiff, Ruby Lee Davis; (2) Plaintiffs' federal law claims brought pursuant to 42 U.S.C. § 1983; and (3) Plaintiffs' claims for punitive damages sought for violations of state law.

[*signature on next page*]

Respectfully submitted,

*/s/ Ryan G. Lavelle*

Deirdre C. McGlinchey, T.A. (24167)
dmcglinchey@joneswalker.com
Ryan G. Lavelle (41305)
rlavelle@joneswalker.com
JONES WALKER LLP
201 St. Charles Ave.
New Orleans, Louisiana 70170
Telephone: (504) 582-8000
Facsimile: (504) 582-8583
*-and-*
Marvin C. Moos (*pro hac vice*)
mmoos@hrmlawyers.com
HORNE ROTA MOOS, LLP
(SDTX Bar No.: 15545)
(TX State Bar No.: 14413900)
2777 Allen Parkway, Suite 1200
Houston, Texas 77019
Telephone: (713) 333-4500
Facsimile: (713) 333-4600

*ATTORNEYS FOR DEFENDANT, LASALLE CORRECTIONAL CENTER, L.L.C.*

**CERTIFICATE OF SERVICE**

I certify that on August 3, 2026, a copy of this pleading was filed electronically with the Clerk of Court using the CM/ECF system which will send notification to all counsel of record.

*/s/ Ryan G. Lavelle*
RYAN G. LAVELLE