**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | | |
|---|---|---|
| **CRYSTAL MANNING as next friend of L.D., a minor, MARIAHLEE MANSAW as next friend of P.M., a minor, MELISSA HOLLINS as next friend of D.H., a minor, as wrongful death beneficiaries of BILLIE DAVIS, deceased, and RUBY LEE DAVIS, individually and as representative of the estate of BILLIE DAVIS, deceased,** ***Plaintiffs*****,** | § | **Case No. 3:25-CV-00871** <br> **JUDGE TERRY DOUGHTY** |
| **v.** | § | |
| **LASALLE CORRECTIONS LLC d/b/a LASALLE CORRECTIONAL CENTER** ***Defendants.*** | § | **MAGISTRATE JUDGE KAYLA McCLUSKY** |

**PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION PARTIALLY GRANTING DEFENDANT LASALLE CORRECTIONS LLC'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

Plaintiffs, Crystal Manning as next friend of L.D., a minor, Mariahlee Mansaw as next friend of P.M., a minor, Melissa Hollins as next friend of D.H., a minor, as wrongful death beneficiaries of Billie Davis, deceased, and Ruby Lee Davis, individually and as representative of the estate of Billie Davis, deceased, file these objections to Magistrate Judge's memorandum opinion and order [Doc. No. 207] filed June 18, 2026.

## I. BACKGROUND

Plaintiffs filed this action on February 27, 2023, in the 11th Judicial District of Harris County, Texas, asserting claims under 42 U.S.C. § 1983 and state-law negligence claims arising from the death of Billie Davis while he was a pretrial detainee. [Doc. No. 1]. Following removal to the Southern District of

Texas and the dismissal of the other named defendants, LaSalle Correctional Center, L.L.C. ("LCC") remained as the sole defendant. [Doc. No. 163]. On June 18, 2025, the Southern District of Texas transferred the action to this Court. [*Id.*]. The Southern District of Texas expressly declined to rule on any other asserted ground for dismissal. Plaintiffs then filed their Third Amended Complaint. [Doc. No. 192].

LCC moved to dismiss the Third Amended Complaint under Rule 12(b)(6) on November 5, 2025. [Doc. No. 193]. Plaintiffs opposed the motion, [Doc. No. 200], and LCC replied, [Doc. No. 203].

On June 18, 2026, the Magistrate Judge issued a Report and Recommendation that LCC's motion be granted in part and denied in part. [Doc. No. 207]. The Report recommends denial of LCC's motion with respect to standing, negligence pertaining to policies and a culture of excessive force, failure to provide adequate medical care and respond to the need for assistance, failure to monitor, and vicarious liability under Louisiana state law. The Report recommends that the motion be granted, and that the claims be dismissed with prejudice, as to Plaintiffs' claims for negligent training and hiring, Section 1983 claims premised on vicarious liability, and claims arising under Article I, Section 5 of the Louisiana Constitution.

Plaintiffs object to two portions of the Report: (1) the recommended dismissal of Plaintiffs' claims for negligent training, and (2) the recommendation that the negligent hiring claims be dismissed with prejudice.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading states a claim for relief when it contains a "short and plain statement … showing that the pleader is entitled to relief…" FED R. CIV. P. 8(a)(2).

To withstand a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 667–68 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not equate to possibility or probability; it lies somewhere in between. *Iqbal*, 556 U.S. at 556. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. See *Twombly*, 550 U.S. at 556. Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly*, 550 U.S. at 556.

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal*, 556 U.S. at 678. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* Moreover, Rule 12(b)(6) authorizes courts to dismiss a claim on the basis of a dispositive issue of law, notwithstanding that it otherwise might be well-pleaded. See *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989) (citations omitted).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 F. App'x 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted). Further, "a

complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation omitted). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

## III. <u>ARGUMENT</u>

### A. Dismissal of Plaintiffs' Negligent Training Claim

Plaintiffs agree that Louisiana substantive law governs the merits of their negligence claims. Under Louisiana law, negligence claims arise under Civil Code articles 2315 and 2316, which provide that every person is responsible for the damage occasioned by his or her fault or negligence. *See* La. Civ. Code arts. 2315–2316. Louisiana applies a single duty-risk analysis to such claims, requiring the plaintiff to establish: (1) that the conduct in question was a cause-in-fact of the resulting harm; (2) that the defendant owed a duty of care to the plaintiff; (3) that the defendant breached that duty; (4) that the risk of harm was within the scope of protection afforded by the duty breached; and (5) that the plaintiff sustained actual damages. *Pitre v. La. Tech Univ.*, 673 So. 2d 585, 589-90 (La. 1996).

The Louisiana Supreme Court recognized the tort of negligent hiring as cognizable under Louisiana fault principles. *Roberts v. Benoit*, 605 So. 2d 1032, 1044 (La. 1991). A claim against an employer for negligent hiring, training, or supervising is "governed by the same duty-risk analysis used

for all negligence cases in Louisiana." *Pelitire v. Rinker*, 270 So. 3d 817, 837 (La. Ct. App. 2019). When an employer hires an employee who, in the performance of his duties, will have a unique opportunity to commit a tort against a third party, the employer has a duty to exercise reasonable care in selecting that employee. *Cote v. City of Shreveport,* 73 So. 3d 435, 440 (La. Ct. App. 2011). For example, in *Levine v. Nationwide Agribusiness Ins. Co.,* liability was imposed on an employer for negligent training and supervision (in addition to negligent hiring) because the employer failed to conduct a proper background check. 381 So. 3d 908, 919 (La. Ct. App. 2024). Therefore, an omission may serve as the basis for a negligent training claim as readily as a specific policy or affirmative act.

In this case, the duty element is not in dispute. The Report rejects LCC's argument that it owed no duty to Mr. Davis. [Doc. No. 207, p. 14f]. That duty necessarily encompasses the training of LCC's officers and medical personnel. An employer cannot satisfy a duty to protect inmates and to provide reasonable medical care while remaining indifferent to whether the employees carrying out those functions are trained to do so.

Regarding breach of that duty, Plaintiffs' Third Amended Complaint identifies specific institutional practices and connects them directly to what befell Mr. Davis. Specifically, Plaintiffs allege that LaSalle officers are conditioned to move inmates out of camera coverage before using force [Doc. No. 192, ¶ 3.11], and that they are directed to keep medical issues in-house [*Id.* at ¶ 312]. This second allegation is also an affirmative directive, which stands in contrast to The Report's contention that "Plaintiffs point to no particular hiring or training policies … which would have contributed to the incident in question." [Doc. No. 207, p. 17]. Plaintiffs provide support for this contention with the attached pricing schedule offering "basic medical coverage" at $60 per day, with 24/7 coverage available only "for an

additional charge." [Doc. No. 192-1, Exhibits A, B]. Consequently, Mr. Davis was never sent for outside evaluation. He was placed in a restraint chair in an isolation cell where he was left to die by LCC employees. [Doc. No. 192, ¶¶ 3.7 to 3.9].

Further, LCC continuously ratified the negligent conduct of its employees. Plaintiffs provide prior cases in which LaSalle entities were found to arguably have customs of excessive force and denial of medical care, including *Moore v. LaSalle Management Co.*, 41 F.4th 493, 503 (5th Cir. 2022), in which the facts are substantially similar to this case. [Doc. No. 192, ¶¶ 3.16 to 3.21]. Plaintiffs also point to the fact that no officer or medical staff member was disciplined following the death of Mr. Davis [*Id*. at ¶ 3.13]. Assistant Warden Stucky, who was present for the beating and failed to intervene, was promoted to Warden. [*Id.* at ¶¶ 3.3, 3.13]. An employer that promotes a supervisor after they watched a lethal beating clearly approves of such conduct and encourages it.

The remaining *Pitre* elements follow. Plaintiffs allege that Mr. Davis arrived at LCC on February 25, 2022 with no injuries, [*Id.* at ¶ 3.2], and that he died on March 1, 2022 of blunt force head trauma inflicted by LCC officers, exacerbated by the failure to provide medical care while he was in obvious distress. [*Id.* at ¶ 3.9]. This is a clear illustration of cause in fact. The risk that untrained officers will beat a restrained detainee in an unmonitored area, and that personnel trained to keep medical issues in-house will fail to seek emergency care for an obvious head injury, is squarely within the scope of the duty a confining authority owes to those in its custody. Damages are not disputed at this stage.

Accepting these allegations as true, Plaintiffs have stated a plausible claim for negligent training under Louisiana law.

**B. Dismissal of the Negligent Training and/or Hiring Claims Without Prejudice**

The Report's sole stated basis for dismissing the negligent hiring and training claims, namely that Plaintiffs "point to no particular hiring or training policies by LaSalle" and "have failed to identify any specific policies or customs for hiring or training, or a specific deficiency in the program for training, which are causally related to the Plaintiffs' injuries" [Doc. No. 207 at 17], inverts the pleading standard announced in *Innova Hospital San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 730 (5th Cir. 2018). There, the Fifth Circuit held that the *Twombly* plausibility standard "does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible," and reversed a Rule 12(b)(6) dismissal that had faulted the plaintiff for failing to plead the specific contents of documents held exclusively by the defendants. *Id.* The facts the Report demands are of the same character as the facts identified in *Innova*. Whether LCC conducted background checks that would have revealed its officers' unfitness, whether its screening practices caused it to place violent or unqualified officers in charge of pretrial detainees, and whether deficiencies in its use-of-force and medical-response training caused its staff to respond to Mr. Davis as they did are questions answered by LCC's own personnel files, hiring records, and training curricula, all of which sit within LCC's exclusive possession and control and none of which Plaintiffs can obtain without discovery. Requiring Plaintiffs to plead the contents of LCC's own files before seeing cannot be squared with *Innova*.

Plaintiffs' well-pleaded allegations independently satisfy *Innova*'s second prong because they supply "factual information that makes the inference of culpability plausible," and they plausibly establish

that LCC's hiring and training failures caused Mr. Davis's injuries and death. The Report itself credited these very allegations in sustaining Plaintiffs' adjacent claims arising from the same incident. The Report found sufficient facts of "an implicit policy or culture" of excessive force and inadequate medical care [Doc. No. 207 at 17], supported by a pattern of strikingly similar violations across LaSalle facilities, see *Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493, 502-03, 509 (5th Cir. 2022); it credited allegations that the Assistant Warden and a major personally witnessed the beating without intervening and that LaSalle promoted one of those supervisors to Warden [Doc. No. 207 at 20]; and it supported allegations that LCC's nurse completed her entire evaluation of a man beaten severely enough to lose several teeth in four minutes, after which Mr. Davis was left restrained and unmonitored for forty-six minutes until found unresponsive [Doc. No. 207 at 17]. These allegations trace a direct chain from LCC's hiring and training practices to Mr. Davis's death. Had LCC exercised reasonable care in screening these employees and in training them on the use of force and the response to obvious medical distress, the beating would not have occurred, and Mr. Davis would have received care in time to survive it. It is difficult to reconcile the institutional culture found adequately pleaded in the Report with the conclusion that Defendants exercised reasonable care in hiring and training.

Dismissal with prejudice is unwarranted, because such a dismissal functions as a denial of leave to amend, and no factor under *Foman v. Davis*, 371 U.S. 178, 182 (1962), supports permanently foreclosing these claims. The Fifth Circuit has instructed that "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Plaintiffs have never had that opportunity. Although the complaint has been amended during this case's procedural history, no prior amendment responded to any judicial ruling identifying a deficiency in

these claims, because Judge Ellis dismissed on venue grounds alone and expressly "declined to issue a ruling on any other grounds for dismissal" [Doc. No. 207 at 2], making the Report the first judicial identification of the asserted defect. Nor is amendment futile. The asserted deficiency is informational rather than legal, as the Report itself confirms that Louisiana law imposes on LCC a duty of protection and adequate medical care [Doc. No. 207 at 14-15] and sustains Plaintiffs' other negligence and *Monell* claims arising from the same duty and the same incident. Discovery on those surviving claims will necessarily reach LCC's personnel files, hiring records, and training materials, which are the very documents containing the causal specifics the Report found missing, so permitting repleading imposes no incremental burden on LCC, while dismissal with prejudice permanently extinguishes claims that the ordinary course of this litigation is likely to substantiate. Plaintiffs therefore respectfully request that the Court decline to adopt the Report as to the negligent hiring and training claims and deny LCC's motion as to those claims or, in the alternative, dismiss them without prejudice with leave to replead following discovery of LCC's hiring, personnel, and training records.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court modify the magistrate judge's Report and Recommendation to Grant in Part and Deny in Part Defendant LCC's MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT, and, in the alternative, to dismiss without prejudice any claims the Court sees fit to grant dismissal of.

[SIGNATURE BLOCK ON FOLLOWING PAGE]

Respectfully submitted,

**WEBSTER VICKNAIR MACLEOD**

By: */s/ Jason C. Webster*
JASON C. WEBSTER
Federal Bar No. 39010
HEIDI O. VICKNAIR
Federal Bar No. 568715
RYAN S. MACLEOD
Federal Bar No. 2164813
STEVEN E. ALDOUS
Federal Bar No. 18256
24 Greenway Plaza, Suite 600
Houston, Texas 77026
713.581.3900 (telephone)
713.581.3907 (facsimile)
filing@wvmlaw.com

and

Mark A. Delphin
Bar No. 4850
Ezra Pettis
Bar No. 36332
Delphin Law Offices
646 Broad Street
Lake Charles, LA 70601
(337) 439-3939 – Telephone
(337) 439-4504 – Facsimile

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record have been served with the foregoing document through the Court's electronic filing system as prescribed by the Federal Rules of Civil Procedure on this the 3rd day of August 3, 2026.

/s/ *Steven E. Aldous*

Steven E. Aldous